BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
JOSEPH O. MASTERMAN*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com

*Motion to Appear Pro Hac Vice Forthcoming

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JAMES MILLER; RYAN PETERSON; GUNFIGHTER TACTICAL, LLC; JOHN PHILLIPS; PWGG, L.P.; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; JOHN W. DILLON; DILLON LAW GROUP, P.C.; and GEORGE M. LEE,

          Plaintiffs,

     v.

ROB BONTA, Attorney General of California; and LUIS LOPEZ, Director of the California Department of Justice Bureau of Firearms,

          Defendants.

Case No.: **'22 CV 1446 RSH DEB**

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, OR OTHER RELIEF**

Plaintiffs James Miller; Ryan Peterson; Gunfighter Tactical, LLC; John Phillips; PWGG, L.P.; San Diego County Gun Owners Political Action Committee; California Gun Rights Foundation; Second Amendment Foundation; Firearms Policy Coalition, Inc.; John W. Dillon; Dillon Law Group, P.C.; and George M. Lee complain of Defendants and allege:

## INTRODUCTION

1.    Plaintiffs bring this suit to challenge the constitutionality of a recently enacted California law that seeks to suppress firearms-related litigation by putting civil rights litigants *and their attorneys* on the hook for the government's attorney's fees and costs if a case results in anything short of total victory for plaintiffs on every claim alleged in a complaint.

2.    On July 22, 2022, Governor Newsom signed into law Senate Bill 1327, which includes a one-way fee-shifting penalty in the government's favor that applies solely to litigation challenging state and local firearm regulations. 2022 Cal. Stat. ch. 146, § 2 (adding Code Civ. Proc. § 1021.11(a)). In simple terms, Section 1021.11 enables government defendants to recover fees if a firearms plaintiff loses on *any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case. Firearms plaintiffs, moreover, cannot be "prevailing parties" under Section 1021.11, meaning they are never entitled to fees.

3.    Plaintiffs here are litigants, lawyers, and law firms in a long-running Second Amendment challenge to California's ban on so-called "assault weapons" through the state's Assault Weapons Control Act. *Miller v. Bonta*, S.D. Cal. Case No. 3:19-cv-01537-BEN-JLB ("*Miller I*"). In August 2021, this Court held the assault weapons ban unconstitutional. *Miller v. Bonta*, 542 F.Supp.3d 1009 (S.D. Cal. 2021). After the Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Ninth Circuit vacated the judgment and remanded the case for further consideration. Section 1021.11, however, forces Plaintiffs to

litigate their assault-weapons challenge under the threat of a potentially ruinous fee award.

4. California's effort to insulate state and local firearms regulations from legal challenges through Section 1021.11's fee-shifting regime is unconstitutional in multiple respects.

5. <u>First</u>, Section 1021.11 is unconstitutional under the Supremacy Clause. The fee-shifting provision is preempted by Congress's statutory scheme to enforce federal constitutional rights, including 42 U.S.C. §§ 1983 and 1988, which details when and under what circumstances attorney's fees may be awarded in cases challenging unconstitutional state action. Section 1021.11 upends Congress's regulation of fee awards by, among other things, purporting to change who may be considered a "prevailing" party entitled to fees.

6. <u>Second</u>, Section 1021.11 violates the First Amendment. The right to petition the government for redress of grievances includes "[t]he right of access to the courts," which "is indeed but one aspect of the right of petition." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The Supreme Court has long held that public interest litigation is a protected "form of political expression" that is essential to secure civil liberties, particularly for minority groups seeking to vindicate politically unpopular rights: "Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963).

7. Plaintiffs in this case – individual litigants, public interest organizations, and the lawyers and law firms who represent them – likewise wish to assert their constitutional rights in litigation; plaintiffs hope to challenge a state law restricting their right to possess firearms, but they (and their counsel) are concerned that doing so could bankrupt them. Section 1021.11 thus strikes at the "fundamental" First

Amendment right of "collective activity undertaken to obtain meaningful access to the courts." *In re Primus*, 436 U.S. 412, 426 (1978) (citation omitted). And "[t]he Constitution does not permit" California to "insulate [its] interpretation of the Constitution from judicial challenge" through regulatory barriers. *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001); *see also Button*, 371 U.S. at 434–36.

8.      Section 1021.11's fee-shifting regime also violates the First Amendment because it is content-based and viewpoint-discriminatory: It singles out firearms advocates' protected activity and seeks to choke off their access to the courts. The State cannot justify such targeting under strict scrutiny.

9.      And <u>third</u>, Section 1021.11's discrimination against gun rights plaintiffs violates the Equal Protection Clause because it draws classifications with respect to the fundamental right to petition and, to make matters worse, that classification singles out the fundamental right to keep and bear arms. California adopted this fee-shifting scheme as a response to – and apparently in retaliation for – a similar fee-shifting scheme that Texas enacted in connection with abortion regulations. But tit-for-tat is not a rational or permissible justification for the classifications in this case. "[A] bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973).

10.     Because SB 1327's fee-shifting penalty is unconstitutional, Plaintiffs seek declaratory and injunctive relief to invalidate Section 1021.11 and enjoin its application.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and

usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

12.     Venue is proper under 28 U.S.C. § 1391(b). Venue is also proper under 28 U.S.C. § 1391 because California's venue rules permit this action to be filed in San Diego, where the Attorney General and California Department of Justice maintain an office. *See* Cal. Code Civ. Pro. § 401(1).

## THE PARTIES

13.     Plaintiff James Miller is a San Diego County resident who is a plaintiff in *Miller I*.

14.     Plaintiff Ryan Peterson is a San Diego County resident who is a plaintiff in *Miller I*. Peterson is the owner-manager of Plaintiff Gunfighter Tactical, LLC, the proprietor of the business, and the individual licensee associated with the dealership.

15.     Plaintiff Gunfighter Tactical, LLC is a California limited liability corporation that operates a firearms dealership in San Diego, California. Gunfighter Tactical is a Federal Firearms Licensee and is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers. Gunfighter Tactical is a plaintiff in *Miller I*.

16.     Plaintiff John Phillips is a San Diego County resident who is a plaintiff in *Miller I*. Phillips is the President of Plaintiff PWGG, L.P. ("PWG"), a proprietor of the business, and the individual licensee associated with the dealership and range facility.

17.     Plaintiff PWGG, L.P. ("PWG") is a California limited partnership doing business as "Poway Weapons & Gear" and "PWG Range," that operates a firearms dealership and firearms range in Poway, California. PWG is a Federal Firearms Licensee and is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers. Plaintiff PWG is a plaintiff in *Miller I*.

18.     Each of the individual plaintiffs and plaintiff firearms dealerships identified in paragraphs 13–17 are members of San Diego County Gun Owners PAC,

California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

19.    Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a political organization whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, California, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, SDCGO sues on its own behalf, and on behalf of its members, including the individual plaintiffs and plaintiff firearms dealerships in this case. SDCGO is a plaintiff in *Miller I*.

20.    Plaintiff California Gun Rights Foundation ("CGF") is a non-profit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has tens of thousands of members and supporters in California, including the individual plaintiffs and plaintiff firearms dealerships in this case. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF brings this action on behalf of itself and its members. The laws, policies, practices, and customs challenged in this case, and Defendants' actions and failures alleged herein, have caused CGF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action. CGF's members have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. CGF is a

plaintiff in *Miller I*.

21.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada. The purposes of FPC include defending and promoting the People's rights – especially the fundamental, individual Second Amendment right to keep and bear arms – advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside the State of California, including San Diego County, California. FPC represents its members and supporters – who include gun owners, prospective gun owners, licensed California firearm retailers, and others – and brings this action on behalf of itself and its members. FPC's members and supporters have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged in this case. The risk of fee liability imposed by Section 1021.11 has caused FPC to refrain from filing suits or litigating constitutional claims that it is otherwise prepared to file and litigate. FPC has also expended and diverted resources because of the enactment of Section 1021.11. FPC is a plaintiff in *Miller I*.

22.    Plaintiff Second Amendment Foundation ("SAF") is a non-profit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. The Court's interpretation of the Second Amendment directly impacts SAF's organizational interests, as well as the rights of SAF's members and supporters in California, including individual Plaintiffs herein. The risk of fee liability imposed by Section 1021.11 has caused SAF to refrain from filing suits or litigating constitutional claims that it is otherwise prepared to file and litigate. SAF brings this

action on behalf of itself and its members. SAF is a plaintiff in *Miller I*.

23.     Plaintiff John W. Dillon is an attorney licensed to practice law in the State of California. Dillon is the founder of Plaintiff Dillon Law Group, A.P.C., a law firm based in Carlsbad, California. Dillon has appeared as counsel of record for the plaintiffs in *Miller I* through Dillon Law Group.

24.     Plaintiff George M. Lee is an attorney licensed to practice law in the State of California. The risk of fee liability imposed by Section 1021.11 has caused Lee to refrain from filing suits with constitutional claims against firearm regulations that he is otherwise prepared to file. Lee has appeared as counsel of record for the plaintiffs in *Miller I*.

25.     Defendant Rob Bonta is the Attorney General of the State of California, and is sued herein in his official capacity. The Attorney General is the chief law enforcement officer of the state, and it is his duty to ensure that California's laws are uniformly and adequately enforced. The Attorney General is the head of the California Department of Justice ("DOJ"). The DOJ and its Bureau of Firearms ("Bureau") regulate and enforce state law related to the sales, transfer, possession, and ownership of firearms. As head of the DOJ, Attorney General Bonta is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the DOJ. Attorney General Bonta is a defendant in *Miller I*. Attorney General Bonta is sued in his official capacity. The Attorney General maintains an office in San Diego.

26.     Defendant Luis Lopez is the Director of the DOJ Bureau of Firearms. On information and belief, Director Lopez reports to Attorney General Becerra, and is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes, regulations, and policies regarding weapons, including firearms and magazines. As head of the Bureau, Director Lopez is responsible for the creation, implementation, execution, and administration of the

laws, regulations, customs, practices, and policies of the DOJ. Director Lopez is a defendant in *Miller I*. He is sued in his official capacity.

## GENERAL ALLEGATIONS

I.      **Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review.**

27.     On July 22, 2022, Governor Newsom signed into law Senate Bill 1327. The bulk of SB 1327 is devoted to creating a private right of action to enforce state laws relating to the unlawful manufacture, distribution, or sale of specified firearms. 2022 Cal. Stat. ch. 146, § 2 (adding Bus. & Prof. Code §§ 22949.60–.71).

28.     This case does not challenge SB 1327's private attorney general features. Rather, it challenges SB 1327's radical effort to suppress firearms-related litigation by putting civil rights litigants *and their attorneys* on the hook for the government's attorney's fees if a case results in anything short of victory on every claim alleged in a complaint. The bill provides, in relevant part:

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

2022 Cal. Stat. ch. 146, § 2 (adding Code Civ. Proc. § 1021.11(a)).

29.     Unlike any other ordinary "fee shifting" statute, however, SB 1327 says a "prevailing party" *cannot be a plaintiff* who brings a case seeking declaratory or injunctive relief regarding a state or local firearm regulation. Code Civ. Proc. § 1021.11(e). And it says government defendants in a firearms case will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on any claim or cause of action." Code Civ. Proc. § 1021.11(b) (emphasis added). In simple terms, then, SB 1327 would enable government

defendants to recover fees if a firearms plaintiff loses *on any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case.

30.    The design of SB 1327 could result in a plaintiff being liable for the government's fees even if the plaintiff obtained all of the relief sought in the litigation. For example, Plaintiff FPC recently secured a victory in the Northern District of Texas on a claim that Texas's law making it illegal for 18-to-20-year-olds to carry firearms in public is unconstitutional. *See* Amended Final Judgment, *FPC v. McCraw*, No. 4:21-cv-1245 (N.D. Tex. Aug. 29, 2022), ECF No. 76. Because FPC won on this broad claim, the court dismissed as moot an alternative, narrower claim that the law was unconstitutional as applied to women. *Id*. In the upside-down world of SB 1327, the defendants in *McCraw* would be considered "prevailing parties" despite the plaintiffs having secured all of the relief they sought in the litigation.

31.    Section 1021.11(c) further gives these "prevailing party" government defendants a three-year window to bring a state law action to recover their fees, notwithstanding that the vast majority of firearms litigation, like this case, is brought under 42 U.S.C. § 1983, and that federal law already provides for the treatment of attorney's fees in those cases: 42 U.S.C. § 1988(b) provides that "prevailing part[ies]" in federal civil rights actions may recover "a reasonable attorney's fee as part of [their] costs" in the action itself.

## II.    Section 1021.11's Fee-Shifting Regime Is Unconstitutional.

32.    SB 1327, including Section 1021.11, is based largely word-for-word on Texas's SB 8, enacted in 2021 in the abortion context. Defendant Bonta has described SB 8 as "blatantly unconstitutional." Press Release, Cal. Dep't of Just., Att'y Gen. Bonta: Texas Cannot Avoid Judicial Review of Its Constitutional Abortion Ban (Oct. 27, 2021), https://bit.ly/3pRWA4F. Like Texas SB 8, SB 1327 has two basic components: one, deputizing private parties to enforce certain California gun laws (and providing those parties with eligibility for fee awards if they prevail); and two, reflected in Section 1021.11, making parties who challenge California gun laws and

fail in any respect liable for the government defendants' attorneys' fees.

33.     In an amicus brief filed on behalf of the challengers when SB 8 was before the Supreme Court, California (along with several other States) highlighted the law's "one-sided attorney's fees provisions that award attorney's fees and costs to any plaintiff who prevails [in exercising the law's private enforcement mechanism] while statutorily *barring* [abortion] providers from recovering their attorney's fees and costs even if they prevail." Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs at 21, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) (internal citation omitted). Of course, this criticism of one-way-fee-shifting applies equally to SB 1327 Section 1021.11's fee-shifting analogue to SB 8. As the challengers elaborated, such one-sided fee shifting "create[s] a heads-I-win-tails-you-lose regime whose evident purpose is to deter and obstruct access to federal and state court." Pet'rs Br. at 10, *Jackson*, 142 S. Ct. 522. The Supreme Court did not address the fee-shifting portion of SB 8.

34.     After the Supreme Court held that the pre-enforcement challenge could proceed "against some of the named defendants but not others," 142 S. Ct. at 530, Governor Newsom dubbed the opinion "outrageous" and "an abomination" because it did not prevent enforcement of SB 8. Gavin Newsom, *The Supreme Court Opened the Door to Legal Vigilantism in Texas. California Will Use the Same Tool To Save Lives.*, WASH. POST (Dec. 20, 2021), https://wapo.st/3wxWoeI. Yet Governor Newsom also called on the California legislature to pursue exactly the same course as Texas by copying SB 8 in the bill that became SB 1327. *See id.*

**A.     Section 1021.11 Is Preempted By The Congressional Scheme Promoting Private Enforcement Of Civil Rights.**

35.     The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. Const. Art. VI, Cl. 2. "Consistent with that command, [the Supreme Court has] long recognized that state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). To that end, "state law is naturally preempted to the extent of any conflict with a federal statute," *Crosby*

*v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), and "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted); s*ee also Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause . . . any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.").

36.     Section 1021.11's attempt to shift the government's fees onto the shoulders of civil rights plaintiffs conflicts with the text and structure of Section 1988, and it strongly undermines Section 1988's purposes. Section 1988 provides that, in most categories of federal civil rights litigation, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the case. 42 U.S.C. § 1988(b). "[A] prevailing *plaintiff* 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (emphasis added). By contrast, the Supreme Court has repeatedly held that, given the purposes of Section 1988, prevailing *defendants* may recover fees only "where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id*. at 429 n.2 (citations omitted); *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (under analogous fee award language in Title VII, establishing standard that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless").

37.     Section 1021.11 directly conflicts with Section 1988 by establishing a wholly separate state law fee regime.

38.     Section 1988 doesn't require a plaintiff to win every claim in order to be a "prevailing party." Relying on congressional guidance, the Supreme Court has "made clear that plaintiffs may receive fees under [Section] 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's

statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989) (Section 1988 fees are appropriate if a party has "prevailed on a significant issue in the litigation and have obtained some of the relief they sought").

39.    Section 1021.11(e), however, says that only government defendants can be "prevailing parties." And because it also says a government defendant is a "prevailing party" if the plaintiff loses on any of its claims, the government would be entitled to fees even where it has been found to violate the Constitution on other claims in the case. In other words, Section 1021.11 flips Section 1988, putting government defendants in a similar if not better position than plaintiffs under Section 1988.

40.    Indeed, Section 1021.11 asserts *reverse* supremacy over federal law. The statute remarkably asserts that Section 1021.11 applies regardless of what any federal court does in an underlying Section 1983 case: Section 1021.11 pronounces that government officials may plow ahead with enforcing the fee-shifting penalty against a Section 1983 plaintiff with a state court collection action even when "*[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." Code Civ. Proc. § 1021.11(d)(3) (emphasis added).

41.    Section 1021.11 also undermines the manifest purpose of Section 1988. Shortly after the Civil Rights Act's passage, the Supreme Court recognized the link between fee-shifting and effective enforcement of civil rights laws. "When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. . . . If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief . . . ." *Newman v. Piggie Park*

*Enters., Inc.*, 390 U.S. 400, 401–02 (1968).

42.     When enacting Section 1988, Congress affirmed that the fee-shifting provision plays a central role in enforcing the nation's civil rights laws by encouraging private action. The Senate Report explained:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. [¶] In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental law are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. Rep. No. 94-1011 at 2 (June 29, 1976). Prevailing-party "fee awards . . . are necessary if citizens are to be able to effectively secure compliance with these [civil rights] statutes. . . . If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases." *Id.* at 6.

43.     To that end, the House Report noted that, in contrast to private civil rights plaintiffs, "governmental entities and officials have substantial resources available to them," such that awarding prevailing defendants their fees "would further widen the gap between citizens and government officials and would exacerbate the inequality of litigating strength." H.R. Rep. No. 94-1558 at 7.

44.     In short, "[t]he purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94–1558 at 1 (1976)); *see also City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) ("Congress enacted [Section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."); *Kay v. Ehrler*, 499 U.S. 432, 436 (1991) (one specific purpose of Section 1988 is to

enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights"). Indeed, the statute is "a powerful weapon" for "victims of civil rights violations," which "improves their ability to employ counsel, to obtain access to the courts, and thereafter to vindicate their rights . . . ." *Evans v. Jeff D.*, 475 U.S. 717, 741 (1986).

45. In direct conflict with Section 1988's purpose, Section 1021.11 threatens to bankrupt any plaintiff considering a challenge to a state or local firearm regulation if the plaintiff does not achieve complete victory in the litigation. This is a heavy-handed deterrent to asserting civil rights claims, whereas Section 1988 expresses Congressional intent to *encourage* civil rights litigation. It is no answer that recoveries under Section 1021.11 and Section 1988(b) could potentially offset – for example, if a plaintiff prevailed on a significant issue, and was therefore entitled to fees under Section 1988(b), but did not prevail on every issue and was therefore liable for fees under Section 1021.11. Even assuming the "reasonable" fees authorized by Section 1988(b) match the automatic Section 1021.11 fees, the plaintiff will still have ended up paying for attorneys, in this case the government's. That remains a practical obstacle to filing a civil rights claim and thus to the accomplishment of Section 1988(b)'s goals.

46. Because Section 1021.11 "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress," California's law "must give way."

**B.    Section 1021.11's Fee-Shifting Regime Violates The First Amendment.**

47. Section 1021.11 encourages state and local governments to push the constitutional envelope when crafting firearms regulations by threatening would-be plaintiffs considering suing over those regulations with a potentially ruinous fee award. The state's effort to insulate its laws from attack by chilling civil rights litigation is incompatible with the First Amendment.

48.     This isn't the first time a state has erected and enforced regulatory barriers to avoid civil rights litigation. The Supreme Court rejected Virginia's attempt to keep the NAACP out of court in *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963) (concerning the state's ban against the "improper solicitation" of legal business), and struck down South Carolina's efforts to punish the ACLU's counsel in *In re Primus*, 436 U.S. 412 (1978) (concerning the state's prohibition against solicitation of prospective litigants).

49.     The Supreme Court has recognized the central role the First Amendment plays in securing access to the courts to preserve civil rights, particularly for groups unable protect their rights through the political channels. "Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Button*, 371 U.S. at 429–30. Such is the case here, where Plaintiffs seek to assert their constitutional rights in litigation against state and local governments that disfavor Second Amendment rights.

50.     In *Button*, the Court highlighted the danger posed by regulations designed to impair citizens' ability to bring civil rights litigation: First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." 371 U.S. at 433. Particularly where a "statute lends itself to selective enforcement against unpopular causes," "a statute broadly curtailing group activity leading to litigation may easily become a weapon of oppression . . . . Its mere existence could well freeze out of existence" the targeted civil litigation. *Id.* at 435–36. Whereas Virginia enacted generally applicable regulations on the solicitation of legal business but applied them selectively against the NAACP, *id*. at 423–25, here, Section 1021.11 targets firearms litigants right on the face of the law.

51.     Since *Button*, the Supreme Court has consistently enjoined state action

that imposes barriers on litigation that may chill protected activity. *See, e.g.*, *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (a state cannot "handicap[]" "the right to petition the court" through indirect regulation that "infringe[s] in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest"); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222–23 (1967) (the state cannot "erode [the First Amendment's] guarantees by indirect restraints" on citizens' ability to assert their legal rights); *United Transp. Union*, 401 U.S. at 580–81, 585–86 ("the First Amendment forbids . . . restraints" that effectively prevent groups from "unit[ing] to assert their legal rights," and striking down economic regulation that denied union members "meaningful access to the courts").

52.     Section 1021.11's obvious and impermissible purpose is to give state and local governments in California a free hand to regulate firearms by suppressing litigation over firearm regulations. Because "[t]he Constitution does not permit" California to "insulate [its] interpretation of the Constitution from judicial challenge," courts "must be vigilant when [the government] imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001). Indeed, the Supreme Court's observations regarding the impact of the law in *Button* are just as applicable to Section 1021.11: California has taken aim at those seeking to vindicate an "unpopular cause[]" by using a fee-shifting penalty as "a weapon of oppression" to "freeze out of existence" firearms-rights litigation. *Button*, 371 U.S. at 434–36.

53.     Section 1021.11's fee-shifting regime further violates the First Amendment because it is content-based and viewpoint-discriminatory: It imposes a unique burden on those who seek to vindicate their civil rights through firearms litigation while favoring all other sorts of constitutional and statutory civil rights claims.

54.     Laws that impose special burdens on disfavored speech and single out

disfavored speakers are constitutionally suspect. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564–66 (2011). States are not permitted to advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, and "may not burden the speech of others in order to tilt public debate in a preferred direction." *Id.* at 578–79. Indeed, "the First Amendment is plainly offended" when the government "attempt[s] to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785–86 (1978). Because California has "target[ed] . . . particular views taken by speakers on a subject" and based the fee provisions of SB 1327 on the "motivating ideology . . . of the speaker," "the violation of the First Amendment is . . . blatant." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). Here, California has violated the First Amendment by using its legislative power to suppress firearms advocates' access to the courts.

55. It should come as no surprise that there is no legitimate historical precedent for a fee-shifting statute that only allows government defendants to recover fees in civil rights litigation. Section 1021.11 thus falls outside of the history and tradition of the First Amendment that is the touchstone of First Amendment constitutional analysis. *See, e.g.*, *United States v. Stevens*, 559 U.S. 460, 468–71 (2010) (placing the burden on the government to show that a type of speech belongs to one of the "historic and traditional categories" of constitutionally unprotected speech); *accord Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (Establishment Clause analysis must be anchored to "historical practices and understandings"); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022) ("[T]o carry that burden [of proving the constitutionality of its actions], the government must generally point to *historical* evidence about the reach of the First Amendment's protections.") (emphasis in original). The lack of historical precedent further demonstrates that SB 1327 violates the First Amendment.

56. But even under First Amendment balancing tests, Section 1021.11 cannot

withstand the appropriate strict scrutiny. For example, it is impossible to imagine any interest the government could assert as compelling, or even permissible, in support of this statute. Punishing Second Amendment litigants in retaliation against Texas for enacting its own abortion restrictions in SB 8 is plainly illegitimate.

57.    Indeed, the State cannot possibly sustain its burden of identifying a compelling interest, as there is no compelling interest for targeting a particular type of civil rights litigant for unfavorable treatment when exercising the fundamental right to assert constitutional claims. But even if the State could somehow identify a compelling interest supporting the statute, Section 1021.11 is not narrowly tailored: there are less restrictive alternatives that would serve such an interest without imposing such severe burdens on core protected rights. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). Even under intermediate scrutiny, the State must at least show that it seriously considered these less-restrictive alternatives. *See McCullen v. Coakley*, 573 U.S. 464, 494 (2014). Simply opting to pursue such interests (even if they were proper) by attempting to insulate all gun laws from legal challenge is illegitimate.

58.    Although strict scrutiny should apply to Section 1021.11, ultimately the proper tier or review does not matter. Section 1021.11 is not even rationally related to any legitimate government interest and therefore would fail even rational basis review. As noted above, SB 1327 was apparently adopted in retaliation for Texas's SB 8 in connection with abortion statutes. Retaliation is not a rational justification for the classifications in this case and, indeed, is an utterly impermissible justification. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Moreno*, 413 U.S. at 534 (striking down statutory classification designed to discriminate against "hippies" and those who lived in "hippie communes"); *accord City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 447, 450 (1985) (striking down a permitting law that

"appear[ed] . . . to rest on an irrational prejudice against the mentally retarded"); *Rinaldi v. Yeager*, 384 U.S. 305 (1966) (striking down state statute that only demanded reimbursement of appellate transcript costs from unsuccessful appellants who were imprisoned); *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) ("[S]ome objectives, such as 'a bare . . . desire to harm a politically unpopular group,' are not legitimate state interests.").

### C.   Section 1021.11's Fee-Shifting Regime Violates The Equal Protection Clause.

59.    For the many reasons described above with respect to discrimination against federal constitutional rights, discrimination against gun rights plaintiffs in particular, and discrimination related to viewpoint, Section 1021.11 also violates the Equal Protection Clause. Indeed, while such forms of discrimination prejudicing First and Second Amendment rights would be subject to, and plainly fail, strict scrutiny, as explained above the classifications at issue here could not even survive rational basis scrutiny.

## III.   Plaintiffs' Experience Confirms Section 1021.11's Unconstitutionality.

60.    Section 1021.11 has already chilled Plaintiffs' ability to bring and continue to prosecute civil rights cases challenging California firearm regulations.

61.    Plaintiffs are litigants, lawyers, and law firms in a long-running Second Amendment challenge to California's ban on so-called "assault weapons" through the state's Assault Weapons Control Act. *Miller v. Bonta*, S.D. Cal. Case No. 3:19-cv-01537-BEN-JLB.

62.    In August 2021, this Court ruled that the ban is unconstitutional, holding that it did not pass constitutional muster under the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). *Miller v. Bonta*, 542 F.Supp.3d 1009 (S.D. Cal. 2021). The Attorney General appealed and, after the Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Ninth Circuit vacated the

judgment and remanded the case for further consideration on August 1. Section 1021.11's fee-shifting penalty forces Plaintiffs to litigate their assault-weapons challenge under the threat of a potentially ruinous fee award.

63.     In the event that Plaintiffs do not achieve total victory in this suit, they face a genuine and serious risk that Defendants here will seek to recover costs and fees incurred before and/or after January 1, 2023, and that a state court could agree with them, at least through the initial stages of any subsequent fee litigation. Such risk alone imposes a present injury on Plaintiffs.

64.     On August 17, 2022, Plaintiff George M. Lee sent counsel for Defendants a letter requesting they stipulate to non-enforcement of the provisions of Section 1021.11 to the plaintiffs and the plaintiffs' counsel in *Miller I*, irrespective of whether the law could be construed to be applied retroactively.

65.     Counsel for Defendants replied by email on August 22, 2022, saying, "We are in receipt of your letter, dated August 17, 2022, in which you request that we stipulate that we will not seek to enforce California Code of Civil Procedure section 1021.11 based on the outcome of *Miller v. Bonta*. We take no position at this time, and nothing in this response should be construed as a position of any kind."

66.     Plaintiffs can only interpret that to be an open-ended non-commitment, allowing Defendants eventually to enforce this law against plaintiffs and their counsel. In having taken no "position of any kind," effectively, Defendants have refused to agree to non-enforcement as to Plaintiffs, Plaintiffs' counsel, and Plaintiffs' counsels' firms, and they have further refused to agree that the statute does not retroactively apply to fees and costs that defendants incurred prior to the statute's enactment or its enforcement on January 1, 2023.

67.     Consequently, Plaintiffs are faced with a credible threat and reasonable fear of joint and several liability for significant costs and fees and a credible threat and reasonable fear of enforcement as soon as January 1, 2023, or anytime thereafter within the statute of limitations period during which Defendants may seek to bring a

fee-recovery action, on the basis that the court has dismissed any of Plaintiffs' claims seeking any declaratory or injunctive relief against any of Defendant for *any* reason. For example, acknowledging that the laws challenged in *Miller* are unconstitutional under the Supreme Court's recent decision in *Bruen*, California could rescind or amend those laws and potentially cause *Miller* to be dismissed as moot. And Plaintiffs, even after effectively prevailing, would be liable for California's costs and attorney's fees under Section 1021.11's literal terms.

68.     Moreover, because of the threat of enforcement, Plaintiffs in *Miller v. Bonta* cannot engage the services of appellate counsel for further appellate proceedings in that case, with specialized experience litigating challenges to bans on so-called "assault weapons," such as the counsel in *Bianchi v. Frosh*, D. Md. Case No. 1:20-cv-03495-JKB, 4th Cir. Case No. 21-1255.

69.     Plaintiffs also have other complaints prepared that they would file forthwith but for Section 1021.11.

70.     Counsel for Plaintiff FPC have prepared new challenges to California's gun-control laws that it believes are inconsistent with the text of the Second and Fourteenth Amendments, as well as the Supreme Court's precedents, including *New York State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111. Some of those challenges have been fully prepared for filing, including the retention of counsel and parties who have signed representation agreements with counsel. However, because of the threat of enforcement of SB 1327's fee-shifting penalty, Plaintiff FPC and its members have refrained from filing those new challenges.

71.     Section 1021.11 has also forced Plaintiff SAF to refrain from challenging California gun-control laws that it believes are unconstitutional, including by forcing Plaintiff SAF to remove itself from litigation that had already commenced. *See Defense Distributed v. Bonta*, C.D. Cal. Case No. 2:22-cv-06200-GW-AGR.

72.     Plaintiffs Lee and Dillon have similarly engaged to represent plaintiffs who wish to bring state and federal claims for declaratory and injunctive relief against

California gun control laws, but have refrained from filing suits with those claims due to Section 1021.11. This has cost Plaintiffs Lee and Dillon revenue, and Section 1021.11 will continue to do so unless and until it is invalidated.

73.     But for Section 1021.11's fee-shifting provisions, these Plaintiffs would forthwith engage in litigation they have refrained from bringing due to the law's threat of ruinous fee liability.

74.     Section 1021.11 thus impedes several Plaintiffs from defending the constitutional rights of their members and clients, and interferes with the Plaintiff attorneys and law firms' business interests in advancing such suits.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF 42 U.S.C. § 1983 (SUPREMACY CLAUSE)**

75.     Plaintiffs incorporate here by reference paragraphs 1 through 74, *supra*, as if fully set forth herein.

76.     The Supremacy Clause provides in relevant part that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land . . . any thing in the constitution or laws of any State to the contrary notwithstanding." U.S. CONST. art. VI, § 2.

77.     Section 1988(b) provides in relevant part that, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

78.     For the reasons set forth above in Part II.A above, Section 1021.11's fee-shifting penalty is preempted and its application is unconstitutional under the Supremacy Clause.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT)

79.    Plaintiffs incorporate here by reference paragraphs 1 through 74, *supra*, as if fully set forth herein.

80.    The First Amendment provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the government for a redress of grievances." U.S. CONST. amend. I. The First Amendment is applicable against the States. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925).

81.    For the reasons set forth above in Part II.B, Section 1021.11's fee-shifting penalty violates the First Amendment to the Constitution.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983 (EQUAL PROTECTION)

82.    Plaintiffs incorporate here by reference paragraphs 1 through 74, *supra*, as if fully set forth herein.

83.    The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

84.    For the reasons set forth above in Part II.C, Section 1021.11's fee-shifting penalty violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1.    Plaintiffs respectfully request that this Court enter a declaratory judgment stating that SB 1327's fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 is preempted and its application is unconstitutional under the Supremacy Clause.

2.      Plaintiffs respectfully request that this Court enter a declaratory judgment stating that SB 1327's fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 violates the First Amendment to the Constitution.

3.      Plaintiffs respectfully request that this Court enter a declaratory judgment stating that SB 1327's fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

4.      Plaintiffs respectfully request that this Court enter a preliminary and permanent injunction enjoining enforcement or application of SB 1327's fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 against Plaintiffs, Plaintiffs' members, and any attorney or law firm representing any Plaintiff in any litigation potentially subject to SB 1327's fee-shifting penalty.

5.      Plaintiffs respectfully request costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be justly entitled.

Dated:  September 26, 2022          BENBROOK LAW GROUP, PC

By _____
   BRADLEY A. BENBROOK
   Attorneys for Plaintiffs