BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
JOSEPH O. MASTERMAN*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com

*Pro hac vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER; RYAN PETERSON; GUNFIGHTER TACTICAL, LLC; JOHN PHILLIPS; PWGG, L.P.; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; JOHN W. DILLON; DILLON LAW GROUP, P.C.; and GEORGE M. LEE,<br><br>                          Plaintiffs,<br><br>     v.<br><br>ROB BONTA, Attorney General of California; and LUIS LOPEZ, Director of the California Department of Justice Bureau of Firearms,<br><br>                       Defendants. | Case No.:  3:22-cv-01446-BEN-JLB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: November 14, 2022<br>Time: 10:30 a.m.<br>Courtroom 5A (5th Floor)<br>Hon. Roger T. Benitez |

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................1

II.    BACKGROUND.................................................................................3

    A.    Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review ........3

    B.    Section 1021.11's Fee-Shifting Regime Has Already Infringed On Plaintiffs' Constitutional Rights ...........................................................6

III.    ARGUMENT ....................................................................................7

    A.    Plaintiffs Will Prevail On The Merits Because Section 1021.11 Is Unconstitutional In Multiple Respects .................................................8

        1.    Section 1021.11 Is Preempted By The Congressional Scheme Promoting Private Enforcement Of Civil Rights........................8

        2.    Section 1021.11's Fee-Shifting Regime Violates The First Amendment ...........................................................................13

            a.    Section 1021.11 Unduly Burdens The First Amendment Right To Access The Courts To Assert Civil Rights Claims...........................................................................13

            b.    Section 1021.11's Fee-Shifting Regime Further Violates The First Amendment Because It Is Content-Based And Viewpoint-Discriminatory ...............................................18

            c.    Section 1021.11 Has No Historical Analogue ...............20

        3.    Section 1021.11's Fee-Shifting Regime Violates The Equal Protection Clause.......................................................................20

    B.    Plaintiffs Will Be Irreparably Harmed Without A Preliminary Injunction ............................................................................................22

    C.    The Balance Of Equities And Public Interest Both Favor Plaintiffs ..23

    D.    The Court Should Waive Bond Or Require Only Nominal Security .24

    E.    The Court Should Advance The Merits Hearing And Consolidate It With The Preliminary Injunction Pursuant to FRCP 65(a)(2)............24

IV.    CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ................................................................... 8

*Altria Grp., Inc. v. Good,*
555 U.S. 70 (2008) ..................................................................................... 8

*Am. Bev. Ass'n v. City & Cty. of San Francisco,*
916 F.3d 749 (9th Cir. 2019) ............................................................... 3, 23

*Am. Trucking Ass'ns v. City of Los Angeles,*
559 F.3d 1046 (9th Cir. 2009) ........................................................... 22, 24

*Arizona Dream Act Coal. v. Brewer,*
757 F.3d 1053 (9th Cir. 2014) ............................................................. 3, 23

*Barahona-Gomez v. Reno,*
167 F.3d 1228 (9th Cir. 1999) ................................................................. 24

*Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar,*
377 U.S. 1 (1964) ..................................................................................... 15

*Borough of Duryea v. Guarnieri,*
564 U.S. 379 (2011) ................................................................................. 13

*Brinn v. Tidewater Transp. Dist. Comm'n,*
242 F.3d 227 (4th Cir. 2001) ............................................................. 12, 13

*Cal. Motor Trans. Co. v. Trucking Unlimited,*
404 U.S. 508 (1972) ................................................................................... 2

*Cal. Pharmacists Ass'n v. Maxwell-Jolly,*
563 F.3d 847 (9th Cir. 2009) ................................................................... 24

*Christiansburg Garment Co. v. EEOC,*
434 U.S. 412 (1978) ................................................................................... 9

*City of Cleburne v. Cleburne Living Center, Inc.,*
473 U.S. 432 (1985) ................................................................................. 19

*City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.,*
538 U.S. 188 (2003) ................................................................................. 18

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ................................................................................. 11

*Clark v. Jeter,*
486 U.S. 456 (1988) ................................................................................. 21

*Cmty. House, Inc. v. City of Boise,*
490 F.3d 1041, 1059 (9th Cir. 2007) ...................................................... 23

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ........................................................................ 8, 13

*Detraz v. Fontana*,
416 So.2d 1291 (La. 1982) ............................................................... 15

*Doe v. Harris*,
772 F.3d 563 (9th Cir. 2014) ........................................................... 23

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ......................................................... 23

*Elrod v. Burns*,
427 U.S. 347 (1976) ......................................................................... 22

*Evans v. Jeff D.*,
475 U.S. 717 (1986) ......................................................................... 11

*First Nat'l Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) ......................................................................... 18

*Fox v. Vice*,
563 U.S. 826 (2011) ..................................................................... 9, 17

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88 (1992) ............................................................................. 8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................... 9, 11

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ............................................................ 8

*In re Primus*,
436 U.S. 412 (1978) .................................................................. 2, 14, 17

*In re Workers Comp. Refund*,
842 F. Supp. 1211 (D. Minn. 1994) ................................................ 16

*Italian Colors Rest. v. Becerra*,
878 F.3d 1165 (9th Cir. 2018) ........................................................... 8

*Kay v. Ehrler*,
499 U.S. 432 (1991) ......................................................................... 11

*Kennedy v. Bremerton Sch. Dist.*,
142 S. Ct. 2407 (2022) ..................................................................... 20

*Lawrence v. Texas*,
539 U.S. 558 (2003) ......................................................................... 20

*Legal Services Corp. v. Velazquez*,
531 U.S. 533 (2001) .................................................................. 2, 16, 17

*McCullen v. Coakley*,
573 U.S. 464 (2014) ......................................................................... 19

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012) ............................................................ 3, 22, 23

*Miller v. Bonta,*
   542 F.Supp.3d 1009 (S.D. Cal. 2021) ....................................................... 6

*Nat'l Ass'n for Advancement of Colored People v. Button,*
   371 U.S. 415 (1963) ................................................................... passim

*New York State Rifle & Pistol Ass'n v. Bruen,*
   142 S. Ct. 2111 (2022) ............................................................. 6, 7, 20

*Newman v. Piggie Park Enters., Inc.,*
   390 U.S. 400 (1968) ..................................................................... 10

*PLIVA, Inc. v. Mensing,*
   564 U.S. 604 (2011) ...................................................................... 8

*Preminger v. Principi,*
   422 F.3d 815 (9th Cir. 2005) ............................................................ 23

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ..................................................................... 18

*Rinaldi v. Yeager,*
   384 U.S. 305 (1966) ..................................................................... 20

*Rodriguez v. Robbins,*
   715 F.3d 1127 (9th Cir. 2013) .......................................................... 24

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
   141 S. Ct. 63 (2020) .................................................................... 22

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
   515 U.S. 819 (1995) ..................................................................... 18

*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,*
   91 Cal. App. 4th 859 (2001) ............................................................ 17

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
   411 U.S. 1 (1973) ....................................................................... 21

*Save Our Sonoran, Inc. v. Flowers,*
   408 F.3d 1113 (9th Cir. 2005) .......................................................... 24

*Schweiker v. Wilson,*
   450 U.S. 221 (1981) ..................................................................... 21

*Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.,*
   4 F.4th 747 (9th Cir. 2021) ............................................................ 24

*Soranno's Gasco, Inc. v. Morgan,* 8
   74 F.2d 1310 (9th Cir. 1989) ........................................................... 14

*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011) ..................................................................... 18

*Spain v. Mountanos,*
  690 F.2d 742 (9th Cir. 1982) ................................................................. 12

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,*
  489 U.S. 782 (1989) ............................................................................... 9

*Tingley v. Ferguson,*
  47 F.4th 1055 (9th Cir. 2022) ................................................................ 8

*U.S.D.A. v. Moreno,*
  413 U.S. 528 (1973) ............................................................................. 19

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n,*
  389 U.S. 217 (1967) ...................................................................... 15, 17

*United States v. California,*
  921 F.3d 865 (9th Cir. 2019) .............................................................. 24

*United States v. Playboy Entm't. Grp., Inc.,*
  529 U.S. 803 (2000) ............................................................................. 19

*United States v. Stevens,*
  559 U.S. 460 (2010) ............................................................................. 20

*United States v. Wilson,*
  631 F.2d 118 (9th Cir. 1980) ................................................................ 6

*United Transp. Union v. State Bar of Mich.,*
  401 U.S. 576 (1971) ............................................................................. 16

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................... 7

*Zepeda v. U.S. I.N.S.,*
  753 F.2d 719 (9th Cir. 1983) .............................................................. 24

**Statutes**

2022 Cal. Stat. ch. 146, § 2 ....................................................................... 1

42 U.S.C. § 1983 ................................................................... 1, 6, 9, 10

42 U.S.C. § 1988 ......................................................................... passim

Code Civ. Proc. § 1021.11 ........................................................................ 1

Fed. R. Civ. P. 65(a)(2) ....................................................................... 3, 24

Fed. R. Civ. P. 65(c) ............................................................................... 24

Fed. R. Evid. 201 ..................................................................................... 6

U.S. CONST. amend. XIV, § 1 ................................................................. 20

U.S. CONST. Art. VI, Cl. 2 ....................................................................... 8

**Other Authorities**

Don Thompson, *New California gun control law mimics Texas abortion measure*, July 22, 2022 (ABC News), https://abcn.ws/3T486qa. .........................................22

Gavin Newsom, *The Supreme Court Opened the Door to Legal Vigilantism in Texas. California Will Use the Same Tool To Save Lives*., WASH. POST (Dec. 20, 2021), https://wapo.st/3wxWoeI. ...........................................................................4

H.R. Rep. No. 94-1558 (Sept. 15, 1976). ....................................................11

Press Release, Cal. Dep't of Just.,
*Att'y Gen. Bonta: Texas Cannot Avoid Judicial Review of Its Unconstitutional Abortion Ban* (Oct. 27, 2021), https://bit.ly/3pRWA4F. ...........................................3

S. Rep. No. 94-1011  (June 29, 1976) ....................................................11

# I.  INTRODUCTION

Plaintiffs bring this motion to enjoin the enforcement of a recently enacted California law that is designed to deter individuals and groups from bringing civil rights litigation and that has already had that effect on Plaintiffs. On July 22, 2022, Governor Newsom signed into law Senate Bill 1327, which includes a one-way fee-shifting penalty in the government's favor that applies only to litigation challenging state and local firearm regulations. 2022 Cal. Stat. ch. 146, § 2 (adding Code Civ. Proc. § 1021.11(a)). In simple terms, Section 1021.11 enables government defendants to recover their attorney's fees and costs if a firearms plaintiff loses on *any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case. Section 1021.11's definitions, moreover, provide that firearms plaintiffs cannot be "prevailing parties" under Section 1021.11, meaning only the government can recover fees. Emphasizing the goal of deterring litigation, Section 1021.11 also targets attorneys who bring such suits and their law firms: they are jointly and severally liable for the government's fees along with plaintiffs if the court dismisses any claim in the suit for any reason.

Section 1021.11 will take effect on January 1, 2023, absent judicial intervention. This Court should enjoin Section 1021.11's enforcement because the law is unconstitutional in multiple respects.

First, Section 1021.11 is unconstitutional under the Supremacy Clause. The fee-shifting provision is preempted by Congress's statutory scheme to enforce federal constitutional rights, including 42 U.S.C. §§ 1983 and 1988, which generally awards fees to civil-rights *plaintiffs* who prevail on any substantial issue in a case challenging unconstitutional state action. Section 1021.11 upends this scheme by, among other things, automatically allowing state and local *defendants* to recover fees if plaintiffs fail to prevail on every claim and thereby removing the incentive that § 1988 creates to bring such claims. And Section 1021.11 purports to award these fees even in a case

where a federal court holds that Section 1021.11 itself is unconstitutional. The Supremacy Cause bars this resistance to federal authority.

<u>Second</u>, Section 1021.11 violates the First Amendment rights of petition and expression. The right to petition the government for redress of grievances includes "[t]he right of access to the courts," which "is indeed but one aspect of the right of petition." *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The Supreme Court has long held that public interest litigation is a protected "form of political expression" that is essential to secure civil liberties, particularly for groups seeking to vindicate politically unpopular rights: "Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429–30 (1963).

Plaintiffs in this case—individual litigants, public interest organizations, and the lawyers and law firms who represent them in a long-running Second Amendment case, *Miller v. Bonta*, S.D. Cal. Case No. 3:19-cv-01537-BEN-JLB ("*Miller I*")—have asserted their constitutional rights in litigation by challenging a state law restricting their right to possess certain firearms. By doing so, they are now at risk of potentially ruinous fee liability under Section 1021.11. Section 1021.11 thus strikes at the "fundamental" First Amendment right of "collective activity undertaken to obtain meaningful access to the courts." *In re Primus*, 436 U.S. 412, 426 (1978) (citation omitted). "The Constitution does not permit" California to "insulate [its] interpretation of the Constitution from judicial challenge" through such regulatory barriers. *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001).

Section 1021.11's fee-shifting regime also violates the First Amendment because it is content-based and viewpoint-discriminatory: It singles out firearms advocates' protected activity and seeks to choke off their access to the courts. The State cannot justify such targeting under strict scrutiny.

And <u>third</u>, Section 1021.11's discrimination against gun-rights plaintiffs violates the Equal Protection Clause because it draws classifications with respect to the fundamental right to petition and, to make matters worse, that classification singles out the fundamental right to keep and bear arms.

The remaining preliminary injunction factors are satisfied. The Ninth Circuit has recognized time and again that constitutional deprivations "unquestionably" constitute irreparable harm. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). And the balance of equities and public interest favor injunctive relief where, as here, a state statute violates federal law. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). The balance tips even more sharply in Plaintiffs' favor given the significant First Amendment interests at stake. *Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019).

Because this case presents only questions of law, there is no need for discovery or further development of the case. And for the reasons shown herein, Plaintiffs thus request that this Court grant this motion, consolidate the preliminary injunction hearing with the trial on the merits under Fed. R. Civ. P. 65(a)(2), and issue an order that declares unconstitutional and restrains Defendants from enforcing Section 1021.11 before it takes effect on January 1, 2023.

## II.  BACKGROUND

**A.  Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review.**

Senate Bill 1327, including Section 1021.11, is based almost word-for-word on a Texas law (SB 8), enacted in 2021 in the abortion context. Defendant Bonta has described SB 8 as "blatantly unconstitutional." Press Release, Cal. Dep't of Just., *Att'y Gen. Bonta: Texas Cannot Avoid Judicial Review of Its Unconstitutional Abortion Ban* (Oct. 27, 2021), https://bit.ly/3pRWA4F. Yet the laws work the same way, the main difference being that SB 8 is openly designed to limit abortions and litigation over abortion regulations, whereas SB 1327 seeks to limit the constitutional right to

possess firearms and litigation over regulations infringing on that right. Like Texas's SB 8, SB 1327 has two basic components: (1) it deputizes private parties to enforce certain California gun laws (and makes those parties eligible for fee awards if they prevail); and (2) as reflected in Section 1021.11, it makes parties who challenge California gun laws liable for the government defendants' attorney's fees if those parties fail to achieve complete victory on every claim.

In an amicus brief filed on behalf of the challengers when SB 8 was before the Supreme Court, California (along with other States) highlighted the law's "one-sided attorney's fees provisions that award attorney's fees and costs to any plaintiff who prevails [in exercising the law's private enforcement mechanism] while statutorily *barring* [abortion] providers from recovering their attorney's fees and costs even if they prevail." Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs at 21, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) (internal citation omitted). Of course, this criticism of one-way-fee-shifting applies equally to Section 1021.11's fee-shifting analogue to SB 8. As SB 8's challengers elaborated in their own brief, such one-sided fee shifting "create[s] a heads-I-win-tails-you-lose regime whose evident purpose is to deter and obstruct access to federal and state court." Pet'rs Br. at 10, *Jackson*, 142 S. Ct. 522.

The Supreme Court did not address the fee-shifting portion of SB 8. But after the Supreme Court held that the pre-enforcement challenge could proceed "against some of the named defendants but not others," 142 S. Ct. at 530, Governor Newsom dubbed the opinion "outrageous" and "an abomination" because it did not prevent enforcement of SB 8. Gavin Newsom, *The Supreme Court Opened the Door to Legal Vigilantism in Texas. California Will Use the Same Tool To Save Lives*., Wash. Post (Dec. 20, 2021), https://wapo.st/3wxWoeI. At the same time, Governor Newsom also called on the California legislature to pursue exactly the same course as Texas by copying SB 8 in the bill that became SB 1327. *See id*.

This case does not challenge SB 1327's private attorney general features.

Rather, it challenges SB 1327's radical effort to suppress firearms-related litigation by putting civil rights litigants *and their attorneys* on the hook for the government's attorney's fees if a case results in anything short of victory on every claim alleged in a complaint. As codified in Section 1021.11, the bill provides, in relevant part:

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

2022 Cal. Stat. ch. 146, § 2 (adding Code Civ. Proc. § 1021.11(a)).

Unlike other "fee shifting" statutes, however, Section 1021.11 specifies that a "prevailing party" *cannot be a plaintiff* who brings a case seeking declaratory or injunctive relief against a state or local firearm regulation. Code Civ. Proc. § 1021.11(e). And it says that government defendants in a firearms case will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on any claim or cause of action." Code Civ. Proc. § 1021.11(b)(1), (2) (emphasis added). In simple terms, then, Section 1021.11 would enable government defendants to recover their attorney's fees and costs if a firearms plaintiff loses *on any claim* in the case, while the plaintiff (and his own attorneys and their law firms) can avoid liability for fees only if they prevail on *every claim* in the case.

In fact, Section 1021.11 would make a plaintiff liable for the government's fees even if the plaintiff obtained all the relief sought in the litigation. For example, Plaintiff Firearms Policy Coalition recently secured a victory in the Northern District of Texas on a claim that Texas's law making it illegal for 18-to-20-year-olds to carry firearms in public is unconstitutional. *See* Amended Final Judgment, *FPC v. McCraw*, No. 4:21-cv-1245 (N.D. Tex. Aug. 29, 2022), ECF No. 76. Because FPC won on this

broad claim, the court dismissed as moot an alternative, narrower claim that the law was unconstitutional as applied to women. *Id*. In the upside-down world of SB 1327, the defendants in *McCraw* would be considered "prevailing" parties entitled to fees even though the plaintiffs secured all the relief they sought.

Section 1021.11(c) further gives these "prevailing party" government defendants a three-year window to bring a state law action to recover their fees, notwithstanding that the vast majority of firearms litigation, like this case, is brought under 42 U.S.C. § 1983, and notwithstanding that federal law already addresses the treatment of attorney's fees in those cases. *See* 42 U.S.C. § 1988(b) (providing that "prevailing part[ies]" in federal civil rights actions may recover "a reasonable attorney's fee as part of [their] costs" in the action itself). Section 1021.11 also purports to insulate itself from review in the underlying action, awarding fees even if "[t]he court in the underlying action [holds] that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion." Code Civ. Proc. § 1021.11(d)(3).

**B.     Section 1021.11's Fee-Shifting Regime Has Already Infringed On Plaintiffs' Constitutional Rights.**

Plaintiffs are litigants, lawyers, and law firms in *Miller I*, a long-running Second Amendment challenge to California's ban on so-called "assault weapons" through the state's Assault Weapons Control Act.[1] In August 2021, this Court held the assault weapons ban unconstitutional. *Miller v. Bonta*, 542 F.Supp.3d 1009 (S.D. Cal. 2021). After the Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Ninth Circuit vacated the judgment and remanded

---

[1]     Specifically, Plaintiffs Miller; Peterson; Gunfighter Tactical, LLC; John Phillips; PWGG, L.P.; San Diego County Gun Owners PAC; California Gun Rights Foundation; Firearms Policy Coalition, Inc.; and Second Amendment Foundation are plaintiffs in *Miller I*. Plaintiffs Dillon; Dillon Law Group, A.P.C.; and Lee are lawyers and law firms litigating the case. Plaintiffs' capacities in *Miller I* are subject to judicial notice. Fed. R. Evid. 201; *see United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (court may take judicial notice of its own records in other cases).

the case for further consideration. The Attorney General has refused to take a position on whether it will seek to enforce the fee-shifting statute in relation to *Miller I*. Lee Decl., ¶¶ 4–5. As a result, Section 1021.11, forces Plaintiffs to continue litigating their assault-weapons challenge under the threat of a potentially ruinous fee award. *Id.*

Section 1021.11 has also chilled Plaintiffs' exercise of First Amendment rights by preventing them from bringing or continuing to prosecute civil rights cases against California firearm regulations beyond *Miller I*. Plaintiffs FPC, Lee, and Dillon have prepared new challenges to California's gun-control laws that they believe are inconsistent with the text of the Second and Fourteenth Amendments, as well as the Supreme Court's precedents, including *New York State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111. Some of those challenges have been fully prepared for filing, including the retention of counsel and parties who have signed representation agreements with counsel. However, because of the threat of enforcement of SB 1327's fee-shifting penalty, Plaintiffs have refrained from filing those new challenges. Combs Decl., ¶¶ 7, 15, 20–27; Lee Decl., ¶ 3; Dillon Decl., ¶ 3; Phillips Decl., ¶ 6; Peterson Decl., ¶ 6; Schwartz Decl., ¶ 6. Section 1021.11 has likewise forced Plaintiff SAF to refrain from challenging California gun-control laws that it believes are unconstitutional, including by forcing Plaintiff SAF to remove itself from litigation that had already commenced. Gottlieb Decl., ¶ 8.

Due to these injuries, Plaintiffs filed this suit on September 26, 2022, and now seek an order preliminarily enjoining Defendants from enforcing Section 1021.11.

## III.  ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction, but a court may employ a "sliding scale" approach in

weighing the four factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). "So, when the balance of hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious questions going to the merits.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) (citation omitted).

This pre-enforcement challenge and the requested injunction are appropriate because Plaintiffs have demonstrated, through the ongoing litigation in *Miller I* and their preparation to bring additional legal challenges to state and local firearms regulations, that they are engaging in conduct within Section 1021.11's reach and that their rights have been chilled by the statute. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171–73 (9th Cir. 2018). "The unique standing considerations in the First Amendment context," where "the Supreme Court has dispensed with rigid standing requirements" and where chilled conduct is "a constitutionally sufficient injury," "tilt dramatically" in favor of pre-enforcement standing. *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (cleaned up).

A. **Plaintiffs Will Prevail On The Merits Because Section 1021.11 Is Unconstitutional In Multiple Respects.**

   1. **Section 1021.11 Is Preempted By The Congressional Scheme Promoting Private Enforcement Of Civil Rights.**

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land." U.S. CONST. Art. VI, Cl. 2. "Consistent with that command, [the Supreme Court has] long recognized that state laws that conflict with federal law are 'without effect.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation omitted). To that end, "state law is naturally preempted to the extent of any conflict with a federal statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), and "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted); *see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause . . . 'any state law, however clearly within a State's acknowledged power, which

interferes with or is contrary to federal law, must yield.'" (citation omitted)).

Section 1021.11's attempt to shift the government's fees onto the shoulders of civil rights plaintiffs conflicts with the text and structure of Section 1988, and it strongly undermines Section 1988's purposes. Section 1988 provides that, in federal civil rights litigation brought under 42 U.S.C. § 1983, such as *Miller I*, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the case. 42 U.S.C. § 1988(b). Whereas Section 1021.11 favors defendants, Section 1988 favors plaintiffs. "[A] prevailing *plaintiff* 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (emphasis added and citation omitted). By contrast, the Supreme Court has repeatedly held that, given the purposes of Section 1988, prevailing *defendants* may recover fees only "where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id*. at 429 n.2 (citations omitted); *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (under analogous fee award language in Title VII, establishing standard that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless").

Section 1988 does not require a plaintiff to win every claim in order to be a "prevailing party." Relying on congressional guidance, the Supreme Court has "made clear that plaintiffs may receive fees under [Section] 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989) (Section 1988 fees are appropriate if a party has "prevailed on a significant issue in the litigation and have obtained some of the relief they sought").

Under Section 1021.11(e), however, only government defendants can be "prevailing parties." And because a government defendant qualifies as a "prevailing

party" under Section 1021.11 if the plaintiff loses on *any* claims—even if the plaintiff "loses" only as a technical matter, such as where a claim is dismissed as moot because the plaintiff has prevailed on another, broader claim—the government would be entitled to fees even where it has been found to violate the Constitution on other claims in the case. In other words, Section 1021.11 flips Section 1988, putting government defendants in a similar if not better position than plaintiffs under Section 1988.

Section 1021.11 thus directly conflicts with Section 1988 by establishing a wholly separate and contradictory state law fee regime. Indeed, Section 1021.11 asserts *reverse* supremacy over federal law, pronouncing that government officials may plow ahead with enforcing the fee-shifting penalty against a Section 1983 plaintiff with a state court collection action after "[t]he court in the underlying action," even a federal court, holds "that any provision of this section is *invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." Code Civ. Proc. § 1021.11(d)(3) (emphasis added).

Section 1021.11 also undermines the manifest purpose of Section 1988. Shortly after the Civil Rights Act's passage, the Supreme Court recognized the link between fee-shifting and effective enforcement of civil rights laws:

> When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. . . . If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief[.]

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968). When enacting Section 1988, Congress affirmed that the fee-shifting provision plays a central role in enforcing the nation's civil rights laws by encouraging private action. The Senate Report explained:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional

1
2
3
4

policies which these laws contain. [¶] In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental law are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

5    S. Rep. No. 94-1011 at 2 (June 29, 1976). Prevailing-party "fee awards . . . are

6    necessary if citizens are to be able to effectively secure compliance with these [civil

7    rights] statutes[.]" *Id*. at 6. "If the cost of private enforcement actions becomes too

8    great, there will be no private enforcement. If our civil rights laws are not to become

9    mere hollow pronouncements which the average citizen cannot enforce, we must

10   maintain the traditionally effective remedy of fee shifting in these cases." *Id*. To that

11   end, the House Report noted that, in contrast to private civil rights plaintiffs,

12   "governmental entities and officials have substantial resources available to them,"

13   such that awarding prevailing defendants their fees "would further widen the gap

14   between citizens and government officials and would exacerbate the inequality of

15   litigating strength." H.R. Rep. No. 94-1558 at 7 (Sept. 15, 1976).

16   In short, "[t]he purpose of [Section] 1988 is to ensure 'effective access to the

17   judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429

18   (quoting H.R. Rep. No. 94–1558 at 1); *see also City of Riverside v. Rivera*, 477 U.S.

19   561, 576 (1986) ("Congress enacted [Section] 1988 specifically because it found that

20   the private market for legal services failed to provide many victims of civil rights

21   violations with effective access to the judicial process."); *Kay v. Ehrler*, 499 U.S. 432,

22   436 (1991) (one specific purpose of Section 1988 is "to enable potential plaintiffs to

23   obtain the assistance of competent counsel in vindicating their rights"). The statute is

24   "a powerful weapon" for "victims of civil rights violations," which "improves their

25   ability to employ counsel, to obtain access to the courts, and thereafter to vindicate

26   their rights[.]" *Evans v. Jeff D.*, 475 U.S. 717, 741 (1986).

27   In direct conflict with Section 1988's purpose, Section 1021.11 threatens to

28   bankrupt any plaintiff who seeks to vindicate civil rights against a state or local

firearm regulation. This heavy-handed deterrent to asserting civil rights claims is a direct obstacle to Congress's express intent, embodied in Section 1988, to *encourage* civil rights litigation. It is no answer that recoveries under Section 1021.11 and Section 1988(b) could potentially offset—for example, if a plaintiff prevailed on a significant issue, and was therefore entitled to fees under Section 1988(b), but did not prevail on every issue and was therefore liable for fees under Section 1021.11. Even assuming the "reasonable" fees for the plaintiff authorized by Section 1988(b) match the automatic Section 1021.11 fees for defendants, the plaintiff will still have ended up paying for attorneys, in this case the government's. That remains a practical obstacle to filing a civil rights claim and thus to the accomplishment of Section 1988(b)'s goals.

Section 1021.11 is a modern-day twist on a prior attempt by the California Legislature to obstruct Section 1988's operation. In *Spain v. Mountanos*, 690 F.2d 742 (9th Cir. 1982), California lost a Section 1983 case over prison conditions and settled the attorney fee issue for $70,000. The Legislature, however, refused to appropriate the money to pay the fees. The State attempted to defy a district court order to pay the fees by saying it could not, under California law, spend money that wasn't appropriated. *Id.* at 744–45. The Ninth Circuit rejected this argument and observed that "a state cannot frustrate the intent of section 1988 by setting up state law barriers to block enforcement of an attorney's fees award." *Id.* at 746; *see id.* (a state cannot "by legislative action" "recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove," because "[s]uch a result would be contrary to the Supremacy Clause of the United States Constitution") (citation omitted).

Similarly instructive is Virginia's failed effort to set up an alternative fee regime in conflict with the Americans with Disabilities Act. In *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 233–34 (4th Cir. 2001), the district court awarded fees to plaintiffs under Section 505 of the ADA, 42 U.S.C. § 12205. The defendant (Tidewater Transportation District) argued that, under Virginia law, the plaintiffs were not entitled to recover fees because they were represented by a state agency set up to

advocate for disabled persons. The Fourth Circuit rejected this argument on Supremacy Clause grounds with reasoning that applies here:

> With the passage of § 505 of the ADA . . . Congress plainly intended to give federal courts discretion to award attorney's fees in ADA . . . actions where appropriate; to adopt Tidewater's argument, would be to permit a state statute to limit that grant of discretion. Put another way, the state statute would "stand as an obstacle" to Congress's intent to give federal courts discretion to award attorney's fees to any entity they deem appropriate, other than the United States.
>
> . . .
>
> To permit states to exempt local governmental entities from liability for attorney's fees awarded by a federal court, pursuant to a federal statute, would allow a state legislature to override a Congressional enactment. A state statute that thwarts a federal court order enforcing federal rights "cannot survive the command of the Supremacy Clause."

*Id.* at 233-34 (citation and footnote omitted). By creating a state-court re-do of the Section 1988 attorney fee questions in firearms cases, Section 1021.11 likewise attempts to "override" Section 1988 and district court decisions under it.

Because Section 1021.11 "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress," *Crosby*, 530 U.S. at 373 (internal quotation marks omitted), California's law "must give way," *PLIVA, Inc.*, 564 U.S. at 617.

### 2.   Section 1021.11's Fee-Shifting Regime Violates The First Amendment.

Not all challenges to firearms regulations are brought under Section 1983, however. It is therefore important for the Court to rule that California's effort to insulate its laws from attack—by deterring firearms plaintiffs and their lawyers from bringing claims for fear of ruinous liability—also violates the First Amendment.

#### a.   Section 1021.11 Unduly Burdens The First Amendment Right To Access The Courts To Assert Civil Rights Claims.

The right of access to courts is "essential to freedom," *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011), and "is subsumed under the first amendment right to petition the government for redress of grievances." *Soranno's Gasco, Inc. v.*

*Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The Supreme Court has recognized the central role the First Amendment plays in securing access to the courts to preserve civil rights, particularly for groups unable to protect their rights through the political channels. "Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts. . . . [U]nder the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances." *Button*, 371 U.S. at 429–30. Such is the case here, where Plaintiffs seek to assert their constitutional rights in litigation against state and local governments that disfavor Second Amendment rights.

This is not the first time a state has erected statutory barriers to deter disfavored civil rights litigation. In *NAACP v. Button*, 371 U.S. 415 (1963), the Supreme Court struck down Virginia's ban on "improper solicitation" of legal business that Virginia used to target the NAACP's efforts to bring civil rights cases. *Id.* at 425–26. The *Button* Court highlighted the danger posed by regulations designed to impair citizens' ability to bring civil rights litigation: First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *Id.* at 433. Where a "statute lends itself to selective enforcement against unpopular causes," "a statute broadly curtailing group activity leading to litigation may easily become a weapon of oppression . . . . Its mere existence could well freeze out of existence" the targeted civil litigation. *Id.* at 435–36. And here, the statute does not just "lend itself" to selective enforcement. Whereas Virginia enacted generally applicable regulations on the solicitation of legal business but applied them selectively against the NAACP, *id.* at 423–25, Section 1021.11 targets firearms litigants right on the face of the law.

The Supreme Court similarly struck down South Carolina's efforts to punish the ACLU's counsel in *In re Primus*, 436 U.S. 412 (1978), where the state used a rule prohibiting solicitation of prospective litigants to target a lawyer who offered free representation to a woman who had been forcibly sterilized. *Id.* at 416–17. Relying on

*Button*, the Court explained that where a state seeks "to regulate expressive and associational conduct at the core of the First Amendment's protective ambit," the state "'may regulate in the area only with narrow specificity.'" *Id.* at 424 (quoting *Button*). As with the NAACP in *Button*, for the ACLU, "'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association.'" *Id.* at 428. The Court then held that South Carolina's statute failed to satisfy the "exacting scrutiny" demanded when the government infringes "core First Amendment rights," *id.* at 432, because the disciplinary rule was overbroad and unjustified by the state's professed regulatory interests. *Id.* at 432–38.

Louisiana adopted a scheme similar to SB 1327 in the wake of *Brown v. Board of Education*. The Louisiana law made plaintiffs suing state officials liable for the government defendants' fees if they lost, but not vice versa, and it required plaintiffs to post a bond for those fees before proceeding. *Detraz v. Fontana*, 416 So.2d 1291, 1293 (La. 1982). The Louisiana Supreme Court noted the state's purpose of resisting *Brown* and maintaining segregation "by making it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against any public official . . . for the redress of grievances suffered because of race." *Id*. at 1293–94. The court held that the law violated the Equal Protection Clause and the Due Process Clause, and it unconstitutionally denied open access to the courts. *Id*. at 1295–97.

Since *Button*, the Supreme Court has consistently enjoined state action that imposes barriers on litigation that may chill protected activity. *See, e.g.*, *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (a state cannot "handicap[]" "the right to petition the court" through indirect regulation that "infringe[s] in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest"); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222–23 (1967) (the state cannot "erode [the First Amendment's] guarantees by indirect restraints" on citizens' ability to assert their legal rights); *United Transp. Union v. State Bar of*

*Mich.*, 401 U.S. 576, 580–81, 585–86 (1971) ("the First Amendment forbids . . . restraints" that effectively prevent groups from "unit[ing] to assert their legal rights," and striking down regulation that denied "meaningful access to the courts").

So too here. Section 1021.11's obvious and impermissible purpose is to give state and local governments in California a free hand to regulate firearms by scaring away parties who may bring litigation over firearm regulations. Because "[t]he Constitution does not permit" California to "insulate [its] interpretation of the Constitution from judicial challenge," courts "must be vigilant when [the government] imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001). Indeed, the Supreme Court's observations regarding the impact of the law in *Button* are just as applicable to Section 1021.11: California has taken aim at those seeking to vindicate an "unpopular cause[]" by using a fee-shifting penalty as "a weapon of oppression" to "freeze out of existence" firearms-rights litigation. *Button*, 371 U.S. at 435–36; *see also*, *In re Workers Comp. Refund*, 842 F. Supp. 1211, 1218–19 (D. Minn. 1994) (requiring challengers of statute to pay state's attorney fees "impermissibly burden[ed their] First Amendment right of access to the courts;" noting "[t]he legislature may not financially hobble an opponent to protect its enactment."), *aff'd* 46 F.3d 813, 822 (8th Cir. 1995).

Section 1021.11 imposes potential fee liability on, and only on, parties and their attorneys who bring declaratory and injunctive claims against firearm regulations—in other words, only upon those who disagree with the State or its subdivisions that the Second Amendment permits those regulations. It is designed to stifle particular constitutional claims, and the law's *in terrorem* effect is already impacting potential litigation. And even if a plaintiff were willing to risk bankruptcy itself, it will have a difficult time finding counsel willing to subject themselves to possible joint and several fee liability.

As a further disincentive, Section 1021.11 also conflicts with counsel's duty of zealous advocacy, which often requires asserting alternative claims that are "reasonable" even "if not ultimately successful," and which each carry a potential for fee liability under Section 1021.11. *Fox*, 563 U.S. at 834. Faced with a new incursion on the Second Amendment, therefore, the only way for plaintiffs and their counsel to avoid this potential liability (aside from not challenging the regulation at all) would be to seek only damages and, if they prevail, repeatedly seek damages against every successive enforcement action, a strategy that is itself cost-prohibitive for most litigants. Of course, where the merits are not already clear under existing law, qualified immunity likely will foreclose a claim for damages in cases against state officials, making that avenue for relief largely illusory as well.

Although Section 1021.11 does not expressly prohibit suits, its prohibitory "effect" is itself a First Amendment violation. *Velazquez*, 531 U.S. at 548; *Button*, 371 U.S. at 433. Indeed, "[t]he First Amendment would . . . be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." *United Mine Workers of Am.*, 389 U.S. at 222. California's own caselaw recognizes "the disastrous effect of closing the courtroom door to plaintiffs who have meritorious claims but who dare not risk the financial ruin caused by an award of attorney fees if they ultimately do not succeed." *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 91 Cal. App. 4th 859, 874 (2001).

In short, "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *In re Primus*, 436 U.S. at 426 (internal quotation marks omitted). And as Plaintiffs' own experiences demonstrate, Section 1021.11 prevents that activity from occurring. This violates the First Amendment. *See Velazquez*, 531 U.S. at 548–49.

1

2

> **b.**     **Section 1021.11's Fee-Shifting Regime Further Violates The First Amendment Because It Is Content-Based And Viewpoint-Discriminatory.**

3

4

5

6

7

8

9

10

11

12

Section 1021.11 is no ordinary fee-shifting statute. It imposes a unique burden on, and only on, those who seek to vindicate their civil rights through firearms litigation, favoring all other constitutional and statutory civil rights claims. "[A]ll citizens, regardless of the content of their ideas, have the right to petition their government." *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003) (upholding city's use of referendum to repeal housing ordinance, and observing that the city's procedures "advanc[ed] significant First Amendment interests" by furthering public debate). Yet Section 1021.11 disfavors the expressive activity of litigants who bring certain petitions based exclusively on the content and viewpoint of those petitions.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Laws that impose special burdens on disfavored speech and single out disfavored speakers are constitutionally suspect. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564–66 (2011). States are not permitted to advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, and "may not burden the speech of others in order to tilt public debate in a preferred direction." *Id.* at 578–79. Indeed, "the First Amendment is plainly offended" when the government "attempt[s] to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785–86 (1978). Because California has "target[ed] . . . particular views taken by speakers on a subject" of public importance and based the fee provisions of SB 1327 on the "motivating ideology . . . of the speaker," "the violation of the First Amendment is . . . blatant." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995). California has used its legislative power to suppress firearms advocates' access to the courts, and its law must therefore satisfy strict scrutiny. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).

28

Section 1021.11 cannot withstand strict scrutiny. It is impossible to imagine any interest the government could assert as compelling, or even permissible, in support of this statute. Punishing Second Amendment litigants in retaliation against Texas for enacting its own abortion restrictions in SB 8 is plainly illegitimate. There is also no compelling interest for targeting a particular type of civil rights litigant for unfavorable treatment when exercising the fundamental right to assert constitutional claims. But even if the State could somehow identify a compelling interest supporting the statute, Section 1021.11 is not narrowly tailored: there are less restrictive alternatives that would serve such an interest without imposing such severe burdens on core protected rights. *See United States v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 813 (2000). For example, if the State had a need (though it has not claimed one) for additional resources to defend firearm regulations, it could enact a general tax. Even under intermediate scrutiny, the State must at least show that it seriously considered these less-restrictive alternatives. *See McCullen v. Coakley*, 573 U.S. 464, 494 (2014). Simply opting to pursue such interests (even if they were proper) by attempting to insulate all gun laws from legal challenge is illegitimate.

Although strict scrutiny should apply to Section 1021.11, Section 1021.11 is not even rationally related to any legitimate government interest and therefore would fail even rational basis review. As noted above, SB 1327 was apparently adopted in retaliation for Texas's SB 8 in connection with abortion statutes. Retaliation is not a rational or permissible justification for the classifications in this case. "[I]f the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S.D.A. v. Moreno*, 413 U.S. 528, 534 (1973) (striking down statutory classification designed to discriminate against "hippies" and those who lived in "hippie communes"); *accord City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 447, 450 (1985) (striking down a permitting law that "appear[ed] . . . to rest on an irrational prejudice against"

individuals with mental illness); *Rinaldi v. Yeager*, 384 U.S. 305, 308–11 (1966) (striking down state statute that only demanded reimbursement of appellate transcript costs from unsuccessful appellants who were imprisoned); *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) ("[S]ome objectives, such as 'a bare . . . desire to harm a politically unpopular group,' are not legitimate state interests.").

### c.    Section 1021.11 Has No Historical Analogue.

The Supreme Court has recently emphasized that First Amendment claims, like Second Amendment claims, must be analyzed by reference to the Nation's history and tradition of regulating speech. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (Establishment Clause analysis must be anchored to "historical practices and understandings"); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022) ("[T]o carry that burden [of proving the constitutionality of its actions], the government must generally point to *historical* evidence about the reach of the First Amendment's protections.") (emphasis in original); *United States v. Stevens*, 559 U.S. 460, 468–71 (2010) (placing the burden on the government to show that a type of speech belongs to one of the "historic and traditional categories" of constitutionally unprotected speech).

But Section 1021.11 has no historic pedigree: It traces its lineage to Texas's SB 8, which was enacted in 2021. There is no legitimate historical precedent for a fee-shifting statute that only allows government defendants to recover fees in civil rights litigation. Section 1021.11 thus falls outside of the history and tradition of the First Amendment, which further confirms its violation of the First Amendment.

### 3.    Section 1021.11's Fee-Shifting Regime Violates The Equal Protection Clause.

Section 1021.11's discrimination against certain exercises of constitutional rights also violates the Equal Protection Clause. The Fourteenth Amendment forbids a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This clause guarantees the right to freely

exercise other constitutional rights. Thus, the Supreme Court has held, state laws that draw "classifications affecting fundamental rights" must be "given the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

Section 1021.11 draws such a classification. The provision effectively separates plaintiffs into two classes: those who "see[k] declaratory or injunctive relief to prevent th[e] state" or public officials from enforcing any firearm regulation, and all others who seek declaratory or injunctive relief to prevent the state or public officials from enforcing any other type of regulation. Code Civ. Proc. § 1021.11(a)). Plaintiffs in the first group are subject to potential fee liability, and thereby impeded from accessing the courts as described above, while those in the second are not. In other words, Section 1021.11 "impinges on [the] fundamental rights" of certain plaintiffs to access the courts based exclusively on the types of claims they bring. *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973) (describing fundamental rights as those "explicitly or implicitly protected by the Constitution"). In this way, Section 1021.11 classifies not only with respect to the fundamental right to access the courts, but also classifies in a way that impinges on the fundamental Second Amendment right itself by preventing plaintiffs from defending that right from regulatory infringement in court. On either basis, Section 1021.11 is subject to strict scrutiny.

As explained above, Section 1021.11 cannot satisfy strict scrutiny. Indeed, it lacks even a rational basis. That is particularly pronounced in the context of the Equal Protection Clause, where California must defend Section 1021.11's laser-like focus on plaintiffs challenging firearm restrictions. There certainly is no legitimate reason for this focus; it either is meant simply to chill Second Amendment lawsuits or to retaliate politically for Texas's enactment of S.B. 8 (or both).[2] Either way, Section

---

[2]   In his press conference celebrating the passage of SB 1327, Governor Newsom emphasized the State's goal: "We're sick and tired of being on the defense in this movement. It's time to put them on the defense." Don Thompson, *New California gun*

1021.11's distinction between plaintiffs lacks a connection to any rational government interest and is a violation of equal protection.

\* \* \*

In short, Plaintiffs are likely to succeed in demonstrating that Section 1021.11's fee-shifting regime is unconstitutional.

## B.   Plaintiffs Will Be Irreparably Harmed Without A Preliminary Injunction.

Plaintiffs are irreparably harmed by Section 1021.11, which imposes a severe burden on their right of access to the courts and deprives them of the full opportunity to vindicate their Second Amendment rights. As the Ninth Circuit has repeatedly emphasized, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("the loss of First Amendment freedoms, for even minimal periods of time, 'unquestionably constitutes irreparable injury.'"). Because "constitutional violations cannot be adequately remedied through damages [such violations] therefore generally constitute irreparable harm." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted).

The constitutional violations have caused concrete harm to Plaintiffs here. Section 1021.11 has not only imposed a substantial potential cost on Plaintiffs for litigating *Miller I*, but it has caused several Plaintiffs to dismiss or refrain from bringing additional lawsuits challenging other California firearms regulations that they believe are unconstitutional. Combs Decl., ¶¶ 7, 15, 20–27; Gottlieb Decl., ¶ 8; Lee Decl., ¶ 3; Dillon Decl., ¶ 3; Phillips Decl., ¶ 6; Peterson Decl., ¶ 6; Schwartz Decl., ¶ 6. Plaintiffs are thus unable to exercise their First Amendment rights to assert Second Amendment rights in court, and the Plaintiff attorneys have lost business.

---

*control law mimics Texas abortion measure*, July 22, 2022 (ABC News), https://abcn.ws/3T486qa.

These significant and ongoing injuries far exceed the Ninth Circuit's baseline for establishing irreparable harm in a constitutional context. *See Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("Because Plaintiffs have a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm if the Ordinance takes effect.") (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)); *accord Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

## C.   The Balance Of Equities And Public Interest Both Favor Plaintiffs.

When the government is a party, the balance-of-equities and public-interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And by establishing a likelihood that California has violated the Constitution, Plaintiffs have "also established that both the public interest and the balance of the equities favor a preliminary injunction." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted); *accord Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The balance tips overwhelmingly in Plaintiffs' favor given the significant First Amendment interests at stake. *See Am. Bev. Ass'n*, 916 F.3d at 758 ("[T]he fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor," and "we have consistently recognized the significant public interest in upholding First Amendment principles.") (internal quotation marks and citations omitted). Likewise, as the Ninth Circuit has put it, "it is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available. . . . In such circumstances, the interest of preserving the Supremacy Clause is paramount." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d

847, 853 (9th Cir. 2009), reiterated in *United States v. California*, 921 F.3d 865, 893–94 (9th Cir. 2019); *see also Am. Trucking Ass'ns*, 559 F.3d at 1059–60 (determining that the balance of equities and the public interest weighed in favor of enjoining a likely preempted ordinance).

Conversely, the government "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (the state "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). The public interest is unquestionably served by preserving access to the courts for *all* Californians who seek to vindicate their constitutional rights, rather than by permitting California to insulate certain laws from judicial scrutiny.

**D.**     **The Court Should Waive Bond Or Require Only Nominal Security.**

Because the State will not suffer monetary hardship and this mater involves a constitutional violation and the public interest, the Court should either waive Rule 65(c)'s bond requirement or impose only a nominal bond. *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (district court has "discretion as to the amount of security required, if any"); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest litigation").

**E.**     **The Court Should Advance The Merits Hearing And Consolidate It With The Preliminary Injunction Pursuant to FRCP 65(a)(2).**

Plaintiffs request that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing. Fed. R. Civ. P. 65(a)(2). An expedited merits hearing is appropriate because Plaintiffs' challenge raises only issues of law such that discovery and additional factual development is unnecessary. *See Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 760 (9th Cir. 2021).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  CONCLUSION

For the reasons set forth above, the Court should, before January 1, 2023, consolidate the preliminary injunction hearing with the trial on the merits under Fed. R. Civ. P. 65(a)(2) and issue an order declaring unconstitutional and restraining Defendants from enforcing California Code of Civil Procedure section 1021.11.

Dated:  October 7, 2022                    BENBROOK LAW GROUP, PC


                                         By   s/ Bradley A. Benbrook
                                            BRADLEY A. BENBROOK
                                            Attorneys for Plaintiffs


                                         COOPER & KIRK, PLLC


                                         By   s/ David H. Thompson
                                            DAVID H. THOMPSON
                                            Attorneys for Plaintiffs