BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
JOSEPH O. MASTERMAN*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com

*Pro hac vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER; RYAN PETERSON; GUNFIGHTER TACTICAL, LLC; JOHN PHILLIPS; PWGG, L.P.; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; JOHN W. DILLON; DILLON LAW GROUP, P.C.; and GEORGE M. LEE,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, Attorney General of California; and LUIS LOPEZ, Director of the California Department of Justice Bureau of Firearms,<br><br>Defendants. | Case No.:  3:22-cv-01446-BEN-MDD<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: November 14, 2022<br>Time: 10:30 a.m.<br>Courtroom 5A (5th Floor)<br>Hon. Roger T. Benitez |

## REPLY MEMORANDUM

Defendants not only fail to defend Section 1021.11, they all but concede it is unconstitutional—just like Texas's SB 8, which Section 1201.11 admittedly "was a response to, and was modeled upon," and which Defendants themselves told the United States Supreme Court was unconstitutional. Opp. at 1:2–3. But Defendants ask this Court to indulge the California Legislature's political stunt just a little while longer, until other courts resolve the constitutionality of SB 8. Defendants take the remarkable position that the Court should not rule here precisely <u>because</u> Defendants agree Section 1021.11 is too "problematic" to enforce—unless and until Texas's version is deemed constitutional. Opp. at 17:9.

The Opposition's legal discussion is sparse and provides no basis for denying a preliminary injunction:

1.  Defendants argue that their conditional non-enforcement position deprives Plaintiffs of standing and renders the case unripe. But ripeness is determined at the time of filing. And Defendants do not dispute that Plaintiffs had standing, and thus that their claims were ripe, when this case was filed.

2.  Defendants' actual theory is that their post-filing change in position denies Plaintiffs of <u>ongoing</u> standing and thereby renders the case <u>moot</u>. Properly framed, this argument is insupportable. To establish that their "voluntary cessation" has mooted the case, Defendants must show that it is "absolutely clear" that the challenged conduct—here, the enforcement of Section 1021.11—will not recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). To the contrary, Defendants say that they *will* enforce Section 1021.11 if another federal court upholds SB 8. The case is not moot.

The Court should not play along with what the Attorney General himself admits is a "dangerous game." Opp. at 14:18–19. Plaintiffs' motion should be granted.

### 1. Defendants' Ripeness Argument Is Misplaced.

Where, as here, defendants argue that their post-filing conduct defeats the Court's Article III jurisdiction, they invoke the doctrine of mootness, not standing or ripeness. Whereas "[m]ootness inquiries . . . require courts to look to changing circumstances that arise after the complaint is filed," "[s]tanding is determined by the facts that exist at the time the complaint is filed," as is ripeness. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (standing and ripeness "boil down to the same question" (citation omitted)); *Equity Lifestyle Properties, Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1190 (9th Cir. 2008) (suit "unripe" when "filed . . . too early").

Defendants <u>do not dispute</u> that Plaintiffs had standing or that the case was ripe when Plaintiffs filed the Complaint. Nor could they. At the time the Complaint was filed, the Attorney General's office had refused to agree not to enforce Section 1021.11's fee-shifting provision—even in *Miller I*, let alone more generally. Compl., ¶¶ 60–74; *see also* ECF No. 14-1, Prelim. Inj. Br. at 6:16–7:21. As the Opposition confirms, the non-enforcement offer came "[a]fter plaintiffs filed their motion in this case." Opp. Br. at 16:13. In light of Section 1021.11's looming threat,[1] Plaintiffs Firearms Policy Coalition and Second Amendment Foundation had refrained from filing additional lawsuits challenging state and local firearms regulations, Compl. ¶¶ 70–71, ECF No. 14-2, Combs Decl., ¶¶ 7, 15, 20–27, ECF No. 14-3, Gottlieb Decl., ¶ 8; attorneys Dillon and Lee had lost business, ECF No. 14-8, Lee Decl., ¶ 3, ECF No.

---

[1] First Amendment challenges in particular "present unique standing considerations" because of the "chilling effect" of speech restrictions. *Ariz. Right to Life Political Action Comm. v. Bayless (ARLPAC)*, 320 F.3d 1002, 1006 (9th Cir. 2003). So "when the threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). Plaintiffs' injury is akin to self-censorship. A plaintiff may suffer injury by being "forced to modify [her] speech and behavior to comply with the statute." *ARLPAC*, 320 F.3d at 1006. Such "self-censorship" is a sufficient injury under Article III "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.* 484 U.S. 383, 393 (1988); *see also Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").

14-7, Dillon Decl., ¶ 3; and the *Miller I* plaintiffs were forced to litigate their claims under the threat of ruinous fee liability and to forgo participating as plaintiffs in other challenges to California firearm regulations, ECF No. 14-5, Phillips Decl., ¶¶ 5–6, ECF No. 14-4, Peterson Decl., ¶¶ 5–6, ECF No. 14-6, Schwartz Decl., ¶¶ 5–6. These are concrete injuries that existed at the time of filing and that would be redressed by enjoining Section 1021.11, thus establishing standing and a fully ripe controversy.

Defendants rely on a line of cases holding that a dispute is not ripe where "contingent" events impact standing or a court's analysis depends on "hypothetical" questions <u>at the outset of the case</u>. Opp. Prelim. Inj., 18:22–19:9. Those principles do not support Defendants' argument, which is that the suit *became* "unripe" in light of the conditional non-enforcement position taken for the first time in their Opposition.

In any event, the fact that Plaintiffs have "suffered actual harm dispenses with any ripeness concerns." *ARLPAC*, 320 F.3d at 1007 n.6; *see also Canatella v. California*, 304 F.3d 843, 855 (9th Cir. 2002) (attorney's challenge to state bar disciplinary statutes was ripe given potential enforcement and "ongoing harm to the expressive rights of [other] California attorneys to the extent they refrain from what [plaintiff] believes to be constitutionally protected activity"). The Court's consideration of the constitutional questions in this case does not depend on conjecture or any hypothetical situation. Plaintiffs have detailed the injuries Section 1021.11 has already inflicted and have presented a "pure legal question[]" that "require[s] little factual development"; and to the extent any were necessary, their experience provides a "concrete factual situation" that makes this case fit for adjudication. *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). The case was ripe, and plaintiffs had standing, when it was filed.

**2. Defendants' Conditional Non-Enforcement Position Does Not Moot This Case.**

Like ripeness, "mootness [is] the doctrine of standing set in a time frame." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (citation omitted). But it

applies at a later point, requiring that standing "continue <u>throughout</u> [the] existence" of the lawsuit. *Id.* (emphasis added; citation omitted). Whereas ripeness asks whether a plaintiff has standing at the time of filing, mootness applies where a plaintiff <u>loses</u> standing <u>after</u> filing. Thus, Defendants' argument that their post-filing conduct renders the case unripe is really an argument that they have <u>mooted</u> the case through "voluntary cessation," that is, by voluntarily removing the current threat of fee-shifting under Section 1021.11. This argument fails.

      A defendant's decision to stop a challenged practice generally "does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc.*, 528 U.S. at 189 (citation omitted). This rule "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). A party "cannot automatically moot a case simply by ending its unlawful conduct once sued" because, if permitted to do so, the party "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (noting that if a court declares the case moot, "[t]he defendant is free to return to his old ways"). Thus, the Supreme Court has cautioned that "maneuvers designed to insulate" conduct from judicial review "must be viewed with a critical eye." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

      Accordingly, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190; *see Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (the "party asserting mootness bears a 'heavy burden' of meeting" this "stringent" standard). Put another way, Defendants "<u>must . . . demonstrate that the change in</u>

REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
-4-

[their] behavior is entrenched or permanent," such that it is "absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practices, that the activity complained of will not reoccur." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. Vilsack*, 6 F.4th 983, 991 (9th Cir. 2021) (citation omitted).

Defendants cannot possibly carry this "heavy burden" when they are saying loud and clear that they will resume enforcement of Section 1021.11 if the Fifth Circuit or a federal district court in Texas (or the Supreme Court) issues a final ruling that Section 1021.11's analogue in SB 8 is constitutional. Defendants' current non-enforcement position is thus anything but "entrenched or permanent." It will evaporate if and when SB 8 is upheld in relevant part.[2]

And, of course, Defendants could change their minds before such a ruling on SB 8. "The possibility that [a party] may change its mind in the future is sufficient to preclude a finding of mootness." *United States v. Generix Drug Corp.*, 460 U.S. 453, 456–57 n.6 (1983). This principle is particularly apt where the alleged basis of mootness is the litigation position of elected officials on a politically charged question. *See, e.g., Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) (interpretation of statute offered by Attorney General is not binding because he may "change his mind . . . and he may be replaced in office"). "[A]n executive action that is not governed by any clear or codified procedures cannot moot a claim." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1038 (9th Cir. 2018) (citation omitted). This is for good reason: The "ease with which [Defendants]" could "alter or abandon" their policy

---

[2] Although Plaintiffs would disagree with this outcome, SB 8 was a unique statute and its fee-shifting provision has not yet been construed. Thus, it is not "absolutely clear" that SB 8's fee-shifting provision will not be upheld. By the same token, this "single factual contingency" does not render the dispute "impermissibly speculative." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009). Defendants' non-enforcement commitment includes a commitment to enforce Section 1021.11 once SB 8's fee-shifting provision is upheld. Thus, the suit is still ripe if that were the relevant question, which, again, it is not.

decision "counsels against a finding of mootness, as 'a case is not easily mooted where the government is otherwise unconstrained should it later desire'" to reverse course. *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (citation omitted); *see also id*. at 901 (a "new policy regarding enforcement" that "could be easily abandoned or altered in the future" is not voluntary cessation); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019) ("If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than . . . bare solicitude itself is necessary to show that the voluntary cessation moots the claim.").

Defendants' claim that they would be "subject to principles of estoppel if they ever reneged on the terms of [their] commitment," Opp. at 19:13–14, is no basis for finding it "absolutely clear" that they will not resume enforcing Section 1021.11. It may not even be a correct statement of law. In *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376 (2nd Cir. 2000), the state argued that First Amendment plaintiffs' fear of a suit "could not possibly be well-founded because the State ha[d] no intention of suing . . . for its activities." *Id*. at 383. The Court said "there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation." *Id*. Indeed, judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (cleaned up), so Defendants' assurances are not as ironclad as claimed. Regardless, such doctrines do not prevent Defendants from resuming the "allegedly wrongful behavior" by *seeking* or *threatening* to enforce Section 1021.11 and thereby chilling Plaintiffs' exercise of First Amendment rights. *Friends of the Earth, Inc.*, 528 U.S. at 190.[3]

Finally, there remains the issue that local jurisdictions may also enforce Section 1021.11, and their lawyers (and aggressive outside law firms) are not bound by

---

[3] Of course, Plaintiffs reserve the right to argue estoppel if Defendants seek to enforce Section 1021.11 notwithstanding their representations in this case.

Defendants' position here. *See North Carolina Right to Life v. Bartlett*, 168 F.3d 705, 710–11 (4th Cir. 1999) (rejecting the state board of election's argument that its stated intention of non-enforcement rendered the First Amendment plaintiffs' fears of prosecution too "hypothetical" to confer standing; not only could the state board change its mind, but the court emphasized the lack of evidence "that the local district attorneys have any intention of refraining from prosecuting" under the challenged law). The same is true here with respect to Section 1021.11, and Plaintiff Firearms Policy Coalition has submitted evidence emphasizing that it dismissed a case against a local government (San Jose) because of Section 1021.11. ECF No. 14-2, Combs Decl., ¶ 22. If any Plaintiffs in this case challenged Section 1021.11 in the context of a local jurisdiction's enforcement, they would be obligated to notify the California Attorney General of the challenge under Federal Rule of Civil Procedure 5.1, and he would have the opportunity to intervene and defend the law. Defendants' non-enforcement position here leaves them free to show up in those cases and advocate in defense of Section 1021.11's constitutionality. Therefore, an injunction at a minimum could be crafted to require the Attorney General not to <u>defend the constitutionality of</u> Section 1021.11 notwithstanding Defendants' non-enforcement commitment. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.") (emphasis in original).

In short, Defendants' conditional non-enforcement position does not constitute voluntary cessation. This case is not moot.[4]

\* \* \*

Defendants' brief makes clear that Plaintiffs are collateral damage in a political feud with Texas, notwithstanding that Plaintiff FPC, like Defendants, filed a brief

---

[4] Defendants' arguments under the other preliminary injunction factors are based on the same premise, *see* Opp. at 19:26–20:11, and therefore fail as well.

against SB 8 in the United States Supreme Court. Two wrongs do not make a right: If California is opposed to SB 8, as Defendants have demonstrated, then California should work to see that law invalidated or repealed, not emulate it.

This is a live controversy. The motion for preliminary injunction is cleanly presented with no opposition on the merits. The motion should be granted.

The Court should also grant Plaintiffs' request to consolidate trial on the merits with the preliminary injunction hearing pursuant to Rule 65(a)(2). Plaintiffs made this request in their preliminary injunction motion, and Defendants have failed to respond. Any opposition is therefore forfeited. Given the purely legal questions in this case, consolidation is warranted. And given the parties' agreement that Section 1021.11 is unconstitutional, the Court should enter final judgment and a permanent injunction.

Dated: November 7, 2022         BENBROOK LAW GROUP, PC

                                By  s/ Bradley A. Benbrook
                                    BRADLEY A. BENBROOK
                                    Attorneys for Plaintiffs


                                COOPER & KIRK, PLLC

                                By  s/ David H. Thompson
                                    DAVID H. THOMPSON
                                    Attorneys for Plaintiffs