1
2
3
4
5
6              UNITED STATES DISTRICT COURT
7              SOUTHERN DISTRICT OF CALIFORNIA
8
9   JAMES MILLER, et al.,                    Case No.:  22cv1446-BEN (JLB)
10                          Plaintiffs,       **ORDER**
11   v.
12   Rob Bonta, Attorney General of
     California, et al.,
13
14                          Defendants.
15
16        Plaintiffs seek injunctive relief from a newly-enacted California state law adding
17   an attorney's fees and costs shifting provision codified at California Code Civ. Procedure
18   § 1021.11.  Fee shifting provisions are not unusual in American law.  But this one is.[1]
19
20   _____
21
22   [1] (a)  Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.
23
24
25   (b)  For purposes of this section, a party is considered a prevailing party if a court does either of the following:
26   (1)  Dismisses any claim or cause of action brought by the party seeking the declaratory or injunctive relief described by subdivision (a), regardless of the reason for the dismissal.
27   (2)  Enters judgment in favor of the party opposing the declaratory or injunctive relief described by subdivision (a), on any claim or cause of action.
28

This provision applies only to suits challenging a law that regulates or restricts firearms. And while the provision entitles a prevailing party to be awarded its attorney's fees and costs, by the statute's definition, a plaintiff cannot be a prevailing party. It has not yet, but the American Bar Association might want to intervene on Plaintiffs' side because the provision remarkably also makes attorneys and law firms that represent non-prevailing plaintiffs jointly and severally liable to pay defense attorney's fees and costs.

*After* these Plaintiffs filed the instant actions, the Defendant Attorney General announced his commitment *not* to seek attorney's fees or costs under this provision "unless and until a court ultimately holds that the fee-shifting provision in [a similar Texas law provision] is constitutional and enforceable…." *See* Defendants' Opposition to Motion for Preliminary Injunction, at 17. In view of his commitment, the Defendant Attorney General asserts that this Court lacks Article III jurisdiction. *Id.* He contends that because of his current commitment to not enforce the fee-shifting provision, the Plaintiffs have not suffered an injury in fact, and the case is not ripe. *Id.* at 18-19. This Court takes a different view. The recent commitment by the Office of the Attorney General is not unequivocal and it is not irrevocable. On the contrary, it evinces an

---

(c)  Regardless of whether a prevailing party sought to recover attorney's fees or costs in the underlying action, a prevailing party under this section may bring a civil action to recover attorney's fees and costs against a person, including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by subdivision (a) not later than the third anniversary of the date on which, as applicable:
(1)  The dismissal or judgment described by subdivision (b) becomes final upon the conclusion of appellate review.
(2)  The time for seeking appellate review expires.
(d)  None of the following are a defense to an action brought under subdivision (c):
(1)  A prevailing party under this section failed to seek recovery of attorney's fees or costs in the underlying action.
(2)  The court in the underlying action declined to recognize or enforce the requirements of this section.
(3)  The court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law, notwithstanding the doctrines of issue or claim preclusion.
(e)  Any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief as described in subdivision (a), shall not be deemed a prevailing party under this section or any other provision of this chapter.

intention *to enforce* the statute if a somewhat similar Texas statute is found to be constitutionally permissible.  Consequently, it appears from the pleadings and the Plaintiffs' declarations that there is a ripe case and controversy that is not made moot by the Defendant Attorney General's announcement of non-enforcement.[2]

Ripeness is a question of timing.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  It is a doctrine designed to prevent the courts from entangling themselves in abstract controversies.  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  It includes both a constitutional and a prudential component.  *Id*. (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)).

Generally speaking, "the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry."  *Calif. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003).  To satisfy the Article III case or controversy requirement, Plaintiffs must establish that they have suffered a constitutionally cognizable injury-in-fact.  *Id.* at 1093 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   In other words, the constitutional aspects of ripeness may often be characterized as "standing on a timeline."  *Thomas*, 220 F.3d at 1138.  Like the doctrine

---

[2]     A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).  Plaintiffs here have demonstrated a realistic danger by describing past and present conduct and declaring an intention to engage in a course of future conduct arguably affected with a constitutional interest, but punishable by § 2021.11, and a credible threat of enforcement by the Defendants.  This test allows pre-enforcement challenges of laws that allegedly infringe on a plaintiff's constitutional rights.  *Thomas*, 220 F.3d at 1137 n.1.  Under longstanding federal precedent, a plaintiff need not "await the consummation of threatened injury to obtain preventive relief."  *Getman*, 328 F.3d at 1094; *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("Courts have found standing where no one had ever been prosecuted under the challenged provision.").

of standing, ripeness "focuses on whether there is sufficient injury." *Portman*, 995 F.2d at 903.  An injury-in-fact is "an invasion of a legally protected interest which is: (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S., at 560.  Just because a legislature enacts a new ostensibly unconstitutional statute, a statute's passage does not alone make for a ripe claim.

> As our cases explain, the "chilling effect" associated with a potentially unconstitutional law being "on the books" is insufficient to "justify federal intervention" in a pre-enforcement suit.  Instead, this Court has always required proof of a more concrete injury and compliance with traditional rules of equitable practice.  The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, *the right to bear arms*, or any other right.

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 538 (2021) (citations omitted) (emphasis added).

Here, there is a more concrete injury.  Plaintiff Firearms Policy Coalition has challenged California firearm regulations in court in the past and is presently involved in cases that will not conclude before the fee-shifting provision takes effect.  *See* Declaration of Brandon Combs.  Because of the risk of fees and costs that could be imposed by virtue of § 1021.11, the Firearms Policy Coalition has dismissed, delayed, or refrained from litigating constitutional claims.  *Id*. at ¶ 21.  It has been forced by the looming fee-shifting provision to dismiss a case that challenged an ordinance regulating firearms passed by the City of San Jose, California.  *Id*. at ¶ 22.  Likewise, it planned to file challenges to other state regulations on firearms but has refrained because of the enactment of § 1021.11.  *Id*. at ¶¶ 24, 25.  Similarly, Plaintiff Second Amendment Foundation has litigated and is litigating cases challenging the constitutionality of firearms regulations.  Because of the risk of attorney's fee liability, it has refrained from filing new cases and in one case has removed itself from pending litigation.  *See* Declaration of Alan Gottlieb, ¶¶ 6-8.  The same is true for Plaintiff San Diego County Gun Owners.  Each of these organizations of similarly interested members has had to

divert some of its money and resources to evaluating the potential financial costs of pursuing constitutional litigation in view of § 1021.11.

Plaintiffs Ryan Peterson and John Phillips have filed actions in the past challenging California regulations on firearms, but they will not in the future because of the risk of incurring liability for the State's attorney's fees through § 1021.11. *See* Declaration of Ryan Peterson; Declaration of John Phillips.

Plaintiffs John W. Dillon, Esq., and George M. Lee, Esq., are attorneys who have represented clients in the past and present challenging California firearm regulations. In fact, they currently represent clients with cases currently pending before the undersigned. Because of the threat of personal liability for the State's attorney's fees under §1021.11, both have refrained from filing new actions. While Defendant Attorney General *now* says he will not enforce § 1021.11, as recently as August 22, 2022, his office declined to stipulate to non-enforcement. *See* Declaration of John W. Dillon, at ¶ 5.

Before the Defendant Attorney General filed his opposition brief with his commitment of non-enforcement in this case, his office appears to have bargained for a dismissal of a Commerce Clause claim for a firearm regulation challenge in exchange for the State waiving any § 1021.11 fee claim in a separate case. *See Boland v. Bonta*, Case No. 8:22-cv-1421-CJC(ADSx), Order Re: Stipulation to Dismiss Second Claim for Relief With Prejudice, (C.D. Cal. Sept. 26, 2022).

Even *after* the briefing in this case, it could be said that Defendant Attorney General is still leveraging the threat of recouping his attorney's fees under § 1021.11 to persuade other plaintiffs to dismiss a federal court challenge to a California firearm regulation. *See Defense Distributed v. Bonta*, Case No. 2:22-cv-6200-GW-AGR, Stipulation re: Dismissal of Action With Prejudice and Waiver and Release of Claims (C.D. Cal. Nov. 18, 2022), at ¶ 3 ("The parties now agree that the First Amended Complaint should be dismissed in exchange for a waiver of fees and costs, and that Defendants should waive and release any and all claims they may have under California law against Plaintiff, its principals, agents and attorneys, arising out of Code of Civil

5

Procedure section 1021.11 that could have been brought with respect to the First Amended Complaint.").

Based on these declarations, there was at the filing of the instant action(s) a ripe case or controversy based on actual injuries-in-fact which continues to the present. These adverse effects are neither abstract nor hypothetical. The enactment of § 1021.11 is presently tending to insulate California firearm regulations from constitutional review. Individuals, associations, and attorneys who ordinarily represent such clients are refraining from seeking judicial relief from California regulations that they believe conflict with federal constitutional rights. The injuries are concrete and particularized, actual and imminent, and not conjectural or hypothetical.

The American court system and its forum for peacefully resolving disputes is the envy of the world. One might question the wisdom of a state law that dissuades gun owners from using the courts to peacefully resolve disagreements over the constitutionality of state laws. The law at issue here is novel. As four concurring Justices recently said in a Texas case with similarities, "where the mere 'commencement of a suit,' and in fact just the threat of it, is the 'actionable injury to another,' the principles underlying [*Ex parte*] *Young* authorize relief against the court officials who play an essential role in that scheme. Any novelty in this remedy is a direct result of the novelty of Texas's scheme." *Whole Woman's Health*, 142 S. Ct., at 544-45 (citations omitted). The same principles authorize relief against the state officials here.

To sum up, Plaintiffs have demonstrated that at the time of filing the action(s) there was a ripe case or controversy sufficient for this Court's exercise of jurisdiction. Does jurisdiction continue to exist in light of the Defendant Attorney General's statement of non-enforcement? In other words, is the case now moot? No. A state actor's voluntary cessation of unconstitutional conduct does not moot a case. More is required than voluntary cessation. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 190 (2000) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly

wrongful behavior could not reasonably be expected to recur.").  The explanation is simple enough.  "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012).

It would usually be sufficient if a state legislature repealed the offensive law.  *See e.g., N.Y. State Rifle & Pistol Ass'n v. City of N.Y.,* 140 S. Ct. 1525, 1526 (2020) ("After we granted certiorari, the State of New York amended its firearm licensing statute, and the City amended the rule . . . . Petitioners' claim for declaratory and injunctive relief with respect to the City's old rule is therefore moot.").  It might be sufficient if the Defendant Attorney General had issued an official opinion that the statute was unconstitutional.  *See e.g., Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004) ("[A] case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional, in spite of the failure of the legislature to remove the statute from the books."); *but see Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 341 (6th Cir. 2007) ("Michigan argues that the plaintiffs' claims became moot after the issuance of the Attorney General's opinion . . . [and] that based on the opinion, the plaintiffs no longer have a fear of prosecution for performing constitutionally protected abortions.  We reject the state's mootness argument for several reasons."); *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000) ("[T]he State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities.  If we held otherwise, we would be placing VRLC's asserted First Amendment rights 'at the sufferance of' Vermont's Attorney General.").  On the other hand, a new attorney general may not agree with his or predecessor's opinion.  *Cf. R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 34 n.4 (1st Cir. 1999) ("In finding a credible threat of prosecution, the district court relied in part on the possibility that the new attorney general might not have agreed with the litigation position taken by his predecessor.  This was error, Attorney General Whitehouse says,

because the court should have presumed continuity between administrations. We need not become embroiled in this dispute, for Attorney General Pine's representations, even if binding on his successors, do not suffice to render the controversy moot."); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir. 1990) ("But the Attorney General . . . may change his mind about the meaning of the statute; and he may be replaced in office."). Here, the Defendant Attorney General could leave office and his successor might begin immediate enforcement. And the Defendant Attorney General's announcement of non-enforcement does not prevent other government attorneys such as county counsel or city attorneys from seeking their attorney's fees and costs against Second Amendment plaintiffs. *Cf. N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999) ("Nor does the record indicate that the local district attorneys have any intention of refraining from prosecuting those who appear to violate the plain language of the statute. NCRL is left, therefore, with nothing more than the State's promise.").

If Defendant Attorney General committed to not enforcing § 1021.11 and entered into a consent judgment binding himself, his office, his successors and district attorneys, county counsel, and city attorneys, it might be a closer question. Again, this does not prevent future Attorneys General or other state statutes from being enacted and enforced. But that is not this case. In this case, the commitment of non-enforcement is conditional. The Defendant Attorney General says that his cessation of enforcement in a seeming case of tit-for-tat will end if, and when, a purportedly similar one-sided fee-shifting Texas statute is adjudged to be constitutional. Certainly, that condition may or may not occur. In the meantime, the statute remains on California's books. And the actual chilling effect on these Plaintiffs' constitutional rights remains. Therefore, the case is not moot.

IT IS SO ORDERED.

Date: December 1, 2022

HON. ROGER T. BENITEZ

United States District Judge