ROBIN B. JOHANSEN, State Bar No. 79084
THOMAS A. WILLIS, State Bar No. 160989
KRISTEN MAH ROGERS, State Bar No. 274672
INEZ KAMINSKI, State Bar No. 345584
OLSON REMCHO, LLP
1901 Harrison Street, Suite 1550
Oakland, CA 94612
Phone: (510) 346-6200
Fax: (510) 574-7061

*Attorneys for Intervenor-Defendant*
*Gavin Newsom, in his official capacity as*
*Governor of the State of California*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### CIVIL DIVISION

| | |
|---|---|
| JAMES MILLER, et al., | Case No.: 3:22-cv-1446-BEN-JLB |
| Plaintiffs, | Case No.: 3:22-cv-1461-BEN-JLB |
| vs. | **INTERVENOR-DEFENDANT'S SUPPLEMENTAL BRIEF** |
| ROB BONTA, et al., | |
| Defendants, | Hearing: |
| and | Date: December 16, 2022 |
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, | Time: 10:00 a.m. Crtrm.: 5A (5th Floor) Judge: The Honorable Roger T. Benitez |
| Intervenor-Defendant. | |
| SOUTH BAY ROD & GUN CLUB, INC., et al., | |
| Plaintiffs, | |
| vs. | |
| ROB BONTA, et al., | |
| Defendants, | |
| and | |
| GAVIN NEWSOM, in his official capacity as Governor of the State of California, | |
| Intervenor-Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 2

LEGAL STANDARD ....................................................................... 4

ARGUMENT ................................................................................. 5

I.      PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF ...................... 5

     A.    Plaintiffs Cannot Succeed On The Merits Of Their Claims ...................... 5

          1.    Section 1021.11 Is Not Preempted By 42 U.S.C. § 1988 ................... 5

          2.    Section 1021.11 Does Not Violate The First Amendment ................ 7

          3.    Section 1021.11 Does Not Violate The Equal Protection Clause ...................................................................................... 12

          4.    Section 1021.11 Does Not Violate Any Right To Counsel ............. 13

          5.    Section 1021.11 Is Not Void For Vagueness ................................... 14

          6.    Section 1021.11 Is Not A Bill Of Attainder ................................... 15

     B.    Plaintiffs Have Not Established The Other Permanent Injunction Factors ........................................................................................ 15

          1.    Plaintiffs Have Not Been Irreparably Harmed ............................ 15

          2.    The Balance Of Equities And Public Interest Weigh Against An Injunction ........................................................................... 17

II.     THIS COURT LACKS ARTICLE III JURISDICTION ...................................... 17

CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES:

*Abrera v. Newsom,* .......................................................................................18
   No. 2:22-cv-1162, 2022 U.S. Dist. LEXIS 222380 (E.D. Cal. Dec. 8, 2022)

*Alliance for the Wild Rockies v. Cottrell,* ..............................................4
   632 F.3d 1127 (9th Cir. 2011)

*BE & K Construction Co. v. NLRB,* .........................................................8
   536 U.S. 516 (2002)

*Brotherhood of Railroad Trainmen v. Virginia,* ................................10
   377 U.S. 1 (1964)

*Burgos v. Long,* ............................................................................................17
   No. 2:11-cv-01906, 2013 U.S. Dist. LEXIS 155177 (E.D. Cal. Oct. 29, 2013)

*Cross Culture Christian Center v. Newsom,* .........................................4
   445 F. Supp. 3d 758 (E.D. Cal. 2020)

*Decker Coal Co. v. Pehringer,* .............................................7, 11, 12, 17
   8 F.4th 1123 (9th Cir. 2021)

*Defense Distributed v. Bonta,* ..............................................................13
   No. 22-cv-6200, 2022 U.S. Dist. LEXIS 195839 (C.D. Cal. Oct. 21, 2022)

*Defense Distributed v. Bonta,* ..............................................................13
   No. 22-cv-6200, 2022 U.S. Dist. LEXIS 198110 (C.D. Cal. Oct 24, 2022)

*Drakes Bay Oyster Co. v. Jewell,* ...........................................................4
   747 F.3d 1073 (9th Cir. 2014)

*eBay Inc. v. MercExchange, L.L.C.,* .......................................................4
   547 U.S. 388 (2006)

*Fang Lin Ai v. United States,* .................................................................14
   809 F.3d 503 (9th Cir. 2015)

*Franceschi v. Yee,* .....................................................................................15
   887 F.3d 927 (9th Cir. 2018)

*Garity v. APWU National Labor Org.,* ................................................16
   828 F.3d 848 (9th Cir. 2016)

*Heffernan v. City of Patterson,* ...............................................................1
   578 U.S. 266 (2016)

*Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* ...............14
   455 U.S. 489 (1982)

**FEDERAL CASES: (continued)**

*In re Primus,* .................................................................................................10
   436 U.S. 412 (1978)

*In re Workers Compensation Refund,* ...........................................................10
   842 F. Supp. 1211 (D. Minn. 1994)

*Klein v. San Clemente,* ....................................................................................4
   584 F.3d 1196(9th Cir. 2009)

*Kolender v. Lawson,* ......................................................................................15
   461 U.S. 352 (1983)

*Legal Services Corp. v. Velazquez,* ................................................................9
   531 U.S. 533 (2001)

*Lockport v. Citizens for Community Action at the Local Level, Inc.,* ..............7
   430 U.S. 259 (1977)

*Moskowitz v. American Savings Bank,* ..........................................................11
   37 F.4th 538 (9th Cir. 2022)

*NAACP v. Button,* ......................................................................................9, 10
   371 U.S. 415 (1963)

*New York State Rifle & Pistol Association v. Bruen,* .....................................13
   142 S. Ct. 2111 (2022)

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* ...................................................6
   442 F. 3d 741 (9th Cir. 2006)

*Sprint Telephony PCS v. County of San Diego,* ...............................................6
   543 F.3d 571 (9th Cir. 2008) (en banc)

*United Mine Workers v. Illinois State Bar Association,* .............................8, 10
   389 U.S. 217 (1967)

*United Transportation Union v. State Bar of Michigan,* ................................10
   401 U.S. 576 (1971)

*Whole Woman's Health v. Jackson,* ....................................................1, 6, 7, 8
   142 S. Ct. 522 (2021)

*Winter v. Natural Resources Defense Council, Inc.,* ........................................4
   555 U.S. 7 (2008)

iii

**Page(s)**

**STATE CASES:**

*Detraz v. Fontana,* ..........................................................................................10
    416 So.2d 1291 (La. 1982)

*Kirby v. Immoos Fire Protection, Inc.,* .............................................................11
    53 Cal. 4th 1244 (2012)

*Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,* ....................11
    91 Cal. App. 4th 859 (2001)

**UNITED STATES CONSTITUTION:**

Amendment II ..................................................................................................13

Amendment VII ...............................................................................................13

**CALIFORNIA CONSTITUTION:**

Article V
    § 13 ...........................................................................................................16

**FEDERAL STATUTES:**

5 U.S.C. § 552 ..................................................................................................11

42 U.S.C. § 1988 ....................................................................................5, 11, 15

**CALIFORNIA STATUTES:**

Code of Civil Procedure
    § 1021.11 ............................................................................................*passim*
    § 425.16 ......................................................................................................9

Civil Code
    § 1717 .........................................................................................................9

Government Code
    § 12965 .....................................................................................................11

Labor Code
    § 1194 .......................................................................................................11

Penal Code
    § 32310 ................................................................................................14, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## MISCELLANEOUS:

1993 Minn. Laws ch. 361, § 10 ....................................................................... 10

Amici Curiae Br. of Mass. et al. in Supp. of Pls.' TRO & Prelim. Inj., United
  States v. Texas, No. 1:21-cv-796, Dkt. 71 (W.D. Tex. Sept. 15, 2021) ...................... 6

California Senate Bill 1327 (2022) ............................................................. *passim*

Compl., *Whole Woman's Health v. Jackson*, No. 1:21-cv-616, Dkt. 1, 2021
  WL 2945846 (W.D. Tex. July, 13, 2021) ............................................................ 7

Fed. R. Civ. P. 65 ........................................................................... 3, 16

Fla. Stat. § 627.428 .......................................................................... 11

Gavin Newsom, opinion, *The Supreme Court Opened the Door to Legal
  Vigilantism In Texas. California Will Use the Same Tool to Save Lives*,
  Wash. Post (Dec. 20, 2021) ......................................................................... 1

Henry Cohen, Cong. Research Serv., 94-970, Awards of Attorneys' Fees by
  Federal Courts and Federal Agencies at 1 (June 20, 2008) .................................... 12

Press Release, Office of the Governor of California, Californians Will Be
  Able to Sue Those Responsible for Illegal Assault Weapons and Ghost
  Guns (July 22, 2022) ................................................................................. 2

Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl., *Fund
  Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 33 (W.D. Tex. Sept. 19,
  2022) ............................................................................................. 6, 8

Texas Senate Bill 8 (2021) .................................................................... *passim*

v

**INTRODUCTION**

In 2021, Texas adopted a novel and cynical abortion law, S.B. 8. The law was designed to infringe a constitutional right by relying on a private right of action mechanism that would shield the law from judicial review, and the law sought to deter challenges to other Texas abortion laws by imposing a one-way fee-shifting rule that made unsuccessful plaintiffs liable for Texas's attorney's fees. The Supreme Court nevertheless allowed Texas's scheme to take effect, at a time when abortion rights still had heightened constitutional protection. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530 (2021).

In response, Defendant-Intervenor Governor Gavin Newsom called the Supreme Court's decision "outrageous," but recognized that "if this kind of lawmaking is fair play," then California could repurpose Texas's procedural gambit to advance California's values and serve its own policy priorities focused on saving lives.[1] "After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Patterson*, 578 U.S. 266, 272 (2016). The Supreme Court itself made that much clear in *Whole Woman's Health*: Its decision not to invalidate S.B. 8 did not turn on which underlying constitutional right was "'chill[ed]'" by the law, but rather the same analysis applied regardless of "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." 142 S. Ct. at 538; *see also id.* at 545 (Roberts, C.J., concurring in part and dissenting in part) (recognizing that under the majority's holding, "[t]he nature of the federal right infringed does not matter").

So, when the California Legislature enacted Senate Bill 1327 ("S.B. 1327")a firearms regulation that is virtually identical to Texas's S.B. 8—the Governor

---

[1] Gavin Newsom, opinion, *The Supreme Court Opened the Door to Legal Vigilantism In Texas. California Will Use the Same Tool to Save Lives*, Wash. Post (Dec. 20, 2021), https://www.washingtonpost.com/opinions/2021/12/20/newsom-california-ghost-guns-vigilante-justice/.

1

signed the bill into law, even as he continued expressing that it was "wrongheaded" for Texas and the Supreme Court to have opened the door to such legislation in the first place.[2]

The only portion of S.B. 1327 challenged here—codified at California Code of Civil Procedure section 1021.11—is a fee-shifting provision that Plaintiffs acknowledge is identical to the equivalent provision in Texas's S.B. 8, and which this Court has recognized is "novel." Order at 7, Dec. 1, 2022, Dkt. 27 (*Miller v. Bonta*, No.: 3:22-cv-1446-BEN-JLB), Dkt. 26 (*South Bay Rod & Gun Club, Inc. v. Bonta*, No.: 3:22-cv-1461-BEN-JLB). The Supreme Court rejected an initial attempt to block all of S.B. 8 from taking effect, and no court has yet ruled on the constitutionality of its fee-shifting provision. As such, in the absence of controlling authority to the contrary, the Governor intervened in these cases to ensure that arguments in defense of such fee-shifting provisions could be fully aired and that the serious questions about their constitutionality could be resolved by the courts. But as with S.B. 8's private right of action, if Texas is ultimately allowed to maintain its fee-shifting rule in S.B. 8, then so too must California be allowed to apply its identical rule in S.B. 1327.

Because no precedent holds that these provisions are unconstitutional, and because Plaintiffs can show no irreparable harm given the Attorney General's pledge not to enforce S.B. 1327 until S.B. 8's constitutionality is adjudicated, Plaintiffs' request for injunctive relief should be denied.

## **BACKGROUND**

The Governor adopts by reference here the Background section of the Attorney General's Opposition to Plaintiffs' Motion for Preliminary Injunction at 3-17, filed on October 31, 2022, Dkt. 22 (*Miller*), which accurately describes the relevant

---

[2] Press Release, Office of the Governor of California, Californians Will Be Able to Sue Those Responsible for Illegal Assault Weapons and Ghost Guns (July 22, 2022), https://www.gov.ca.gov/2022/07/22/californians-will-be-able-to-sue-those-responsible-for-illegal-assault-weapons-and-ghost-guns/.

factual background and need not be repeated here. *See also* Def.'s Opp. Prelim. Inj., Nov. 2, 2022, Dkt. 27 (*South Bay*).

On October 18, 2022, the parties jointly submitted a motion and stipulation requesting an order extending the time for defendants to respond to the complaint to 15 days after the Court enters an order resolving the preliminary injunction motion. Joint Mot. at 2, Dkt. 19 (*Miller*), Dkt. 14 (*South Bay*). On October 19, 2022, this Court entered the requested order. Order at 2, Dkt. 20 (*Miller*). Pursuant to that order, no defendant has yet responded to the complaint.

On December 1, 2022, this Court adopted the tentative order it previously issued on November 15, 2022, rejecting the Attorney General's argument that plaintiffs lack standing and concluding that there is a case or controversy under Article III, consolidating a trial on the merits with a hearing on the preliminary injunction motion under Federal Rule of Civil Procedure 65(a)(2), and setting both the motion hearing and bench trial for December 16, 2022. Order at 9, Dec. 1, 2022, Dkt. 27 (*Miller*), Dkt. 26 (*South Bay*).

On December 8, 2022, the Attorney General filed a brief indicating that he would not be defending the constitutionality of California Code of Civil Procedure section 1201.11. Def.'s Suppl. Br. at 2, Dkt. 29 (*Miller*), Dkt. 27 (*South Bay*). On December 9, 2022, the Governor moved to intervene in the case under Rule 24(a) of the Federal Rules of Civil Procedure to defend the constitutionality of the statute. Intervenor-Def.'s Mot. at 2, Dkt. 31 (*Miller*), Dkt. 29 (*South Bay*). That same day, the Court granted the motion. Order at 2, Dkt. 34 (*Miller*), Dkt. 31 (*South Bay*).

Plaintiffs' pending motions seek "a preliminary injunction enjoining enforcement or application of Senate Bill 1327's fee-shifting provision set forth in California Code of Civil Procedure section 1021.11 against Plaintiffs, Plaintiffs' members, and any attorney or law firm representing any Plaintiff in any litigation potentially subject to S.B. 1327's fee-shifting penalty." Pls.' Br. at 1, Dkt. 14 (*Miller*),

Dkt. 10 (*South Bay*). In their complaint, Plaintiffs have also asked the Court to enter an equivalent permanent injunction, as well as a declaratory judgment. Compl. 23-24 (Prayer for Relief ¶¶ 1, 2, 4), Dkt. 1 (*Miller*); *see* Compl., Dkt. 1 (*South Bay*).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiffs, as the movants, bear the burden of proving each of these elements. *Klein v. San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). Courts may also issue a preliminary injunction where there are "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff," so long as the remaining two *Winter* factors are present. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, 765 (E.D. Cal. 2020).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*.

In light of the Court's order consolidating the hearing on Plaintiffs' motion for preliminary injunction with a trial on the merits, this response focuses on the permanent injunction standard. Further, the Governor agrees with the Plaintiffs in

4

*Miller* that the issues before the Court are purely legal, Pls.' Br. at 3, Dkt. 14 (*Miller*), and there are no factual disputes requiring an evidentiary hearing.

## ARGUMENT

## I. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

### A. Plaintiffs Cannot Succeed On The Merits Of Their Claims

#### 1. Section 1021.11 Is Not Preempted By 42 U.S.C. § 1988

Plaintiffs argue that section 1021.11 is preempted by the federal fee shifting rule for civil rights claims codified at 42 U.S.C. § 1988(b). That federal statute permits prevailing claimants in certain civil rights actions to recover attorney's fees, providing that in such actions: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . [with limited exceptions]." *Id.* Plaintiffs challenging Texas S.B. 8's parallel fee-shifting provision raised the same argument, and Texas's response is equally applicable here.

> There are three types of federal preemption: (1) express preemption; (2) field preemption; and (3) conflict preemption." *Aldridge v. Mississippi Dep't of Corr.*, 990 F.3d 868, 874 (5th Cir. 2021). Courts "start with the basic presumption that Congress did not intend to displace state law." *Id.* at 875. As an initial matter, there is no express preemption in Section 1988. *See* 42 U.S.C. § 1988. Plaintiffs appear to argue that § 1988 constitutes field preemption because it is "a comprehensive fee-shifting statute" for § 1983 claims. Dkt. #6 at 48. "Field preemption exists when (1) 'the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation,' or (2) 'where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Aldridge*, 990 F.3d at 874 (quoting *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). However, § 1988 cannot be a "comprehensive" fee statue because Congress left room for supplementary state regulation. Specifically, the award of fees under § 1988 is discretionary. *See* 42 U.S.C. § 1988(b). Therefore, § 1988 leaves room for the States to regulate, namely where the court declines to award fees to a prevailing

5

party. S.B. 8 fills that void. Tex. Civ. Prac. & Rem. Code § 30.022(a). For the same reason the fee-shifting provision of S.B.8 is not conflict preempted. "Conflict preemption, which is not 'rigidly distinct' from field preemption, is present when (1) 'compliance with both state and federal law is impossible,' or (2) state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Aldridge*, 990 F.3d at 875. S.B.8's fee shifting provision does not directly conflict with § 1988 in all circumstances and does not render compliance with federal law impossible or stand as an obstacle to the purposes of § 1988. Therefore, S.B.8 is not conflict preempted. Because none of the three types of preemption apply to the fee shifting provision of SB 8, Plaintiffs have failed to state a claim for preemption (if such a claim existed).

Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl., *Fund Texas Choice v. Paxton*, No. 22-cv-859, Dkt. 33 at 26-27 (W.D. Tex. Sept. 19, 2022).[3]

So too here. Just like Texas's S.B. 8, nothing in S.B. 1327 prevents simultaneous awards of attorney's fees to a plaintiff under § 1988 and to a defendant under state law in a mixed-result case, so there is no conflict. And, as in *Whole Woman's Health*, no part of the analysis of this procedural mechanism turns on the underlying constitutional right invoked by a plaintiff. *See* 142 S. Ct. at 538; *see also id.* at 545 (Roberts, C.J., concurring in part and dissenting in part). Further, Plaintiffs here raise only a facial challenge, and that facial challenge must fail because they argue that section 1021.11 may be preempted in only some instances. *See* Pls.' Br. at 14, Dkt. 14 (Miller); *Sprint Telephony PCS v. Cty. of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc) (the requirement that plaintiffs asserting facial challenges must establish no set of circumstances exist under which the statute would be valid applies with "with full force" in federal preemption cases).

---

[3] Briefs, court filings and other matters of public record are judicially noticeable. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F. 3d 741, 746 n.6 (9th Cir. 2006).

## 2.   Section 1021.11 Does Not Violate The First Amendment

Plaintiffs argue that section 1021.11 unconstitutionally impairs their First Amendment right to petition the government for redress of grievances, and that it violates the First Amendment as content- and viewpoint-based discrimination.  No federal court, however, has yet ruled on the constitutionality of Texas's novel statutory scheme, replicated by California in S.B. 1327.  Accordingly, plaintiffs bear the burden of overcoming the presumption of constitutionality to which a statute is entitled.  *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1133 (9th Cir. 2021); *Lockport v. Citizens for Cmty. Action at the Local Level, Inc*., 430 U.S. 259, 272 (1977).

There is no dispute that section 1021.11 at least raises serious constitutional questions.  As the plaintiffs in *Whole Woman's Health* explained, Texas's analogous fee-shifting mechanism was designed to "deter *any* challenges, including meritorious challenges, to state and local abortion restrictions in Texas, not just challenges to S.B. 8."  Compl. ¶ 11, *Whole Woman's Health v. Jackson*, No. 1:21-cv-616, Dkt. 1, 2021 WL 2945846 (W.D. Tex. July, 13, 2021).  In an amicus brief filed in the district court in a lawsuit brought by the federal government, California and other states explained that S.B. 8's fee-shifting provision was an "attempt[ ] to thwart judicial review," and one of several "unusual" and "extraordinary provisions" designed to insulate all Texas abortion laws from challenge.  Amici Curiae Br. of Mass. et al. in Supp. of Pls.' TRO & Prelim. Inj., *United States v. Texas*, No. 1:21-cv-796, Dkt. 71, at 7-8 (W.D. Tex. Sept. 15, 2021).  And Justice Sotomayor later described S.B. 8's fee-shifting provision as "procedural meddling," explaining that it was designed—like the other provisions of S.B. 8—to "deter efforts to seek pre-enforcement review[.]"  *Whole Woman's Health*, 142 S. Ct. at 546 n.2 (Sotomayor, J., concurring in the judgment in part and dissenting in part).  Those arguments are rooted in the principle that the "right of access to the courts is but one aspect of the right to petition," and the right to petition is "one of the most precious of the liberties safeguarded by the Bill of Rights"—a right

"implied by the very idea of a government, republican in form." *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1876), *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967), and *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)) (punctuation omitted).

But those concerns did not move the Supreme Court in *Whole Woman's Health*. And the validity of Texas's fee-shifting provision remains an open question that is currently being litigated in Texas. As the Governor has explained from the outset, California's preference is that neither law be tolerated, but if a provision of S.B. 8 withstands a constitutional challenge, then so too must S.B. 1327's identically worded provision. That is so notwithstanding that S.B. 1327 addresses firearms regulations, which receive heightened constitutional scrutiny, whereas S.B. 8 addresses abortion regulations, which now in most cases receive rational-basis review under the Due Process Clause. Whatever the basis of the underlying claim (whether a constitutional claim or any other), the *First Amendment right to petition* a court to raise that claim is the same, and the First Amendment either does or does not allow a fee-shifting provision like S.B. 8 and S.B. 1327's.

While fee-shifting provisions like S.B. 8's are outrageous and objectionable, no court has yet held that this type of fee-shifting provision is unconstitutional. And, based on the current state of the law, there are arguments that they are constitutional. Defending against a similar First Amendment challenge to S.B. 8's fee-shifting provisions, the Texas Attorney General has argued that "'the proposition that the [F]irst [A]mendment, or any other part of the Constitution, prohibits or even has anything to say about fee-shifting statutes in litigation seems too farfetched to require extended analysis.'" Resp. to Pls.' Mot. for Prelim. Inj. & Mot. to Dismiss Pls.' Compl., *Fund Texas Choice v. Paxton*, No. 22-cv-859, at 13-14 (quoting *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir.

1987)).  There is plainly no First Amendment right *to* prevailing party fees for a plaintiff, notwithstanding that requiring parties to pay their own way in court (as under the American Rule) imposes a meaningful burden on access to justice and chills litigation that might otherwise be brought.  Arguably, there is no constitutional right *to avoid* paying another party's fees either.  No existing precedent holds that the expense of litigation—whether a party's own attorney's fees or both sides' fees—in itself is a First Amendment violation.

Additionally, a statute awarding attorney's fees to a prevailing defendant could be viewed like any other rule, such as court filing fees, that merely increases the potential cost of litigating above and beyond a plaintiff's own cost of hiring counsel.  For decades, California has allowed defendants to recover attorney's fees in certain circumstances.  *See*, *e.g.*, Cal. Code Civ. Proc. § 425.16(c)(1) (California anti-SLAPP law, providing that "a prevailing defendant . . . shall be entitled to recover that defendant's attorney's fees"); Cal. Civ. Code § 1717(a) (providing that even where a contract provides for an award of attorney's fees to only one party, any prevailing party in a suit on the contract is entitled to attorney's fees).  Those provisions no doubt make potential plaintiffs think twice about whether to file suit and what claims to bring—even claims to vindicate their fundamental rights and vested contractual rights.  But, controversial though they have been, those provisions have not been held to violate the First Amendment.

None of the federal cases plaintiffs cite hold otherwise.  Rather, those cases concern attempts to outright *prohibit* certain forms of petition, solicitation of legal representation, or providing advice concerning appropriate counsel.  None concern laws that only add to the cost of bringing certain types of claims.  *See*, *e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 536 (2001) (concerning prohibition against legal representation seeking to challenge or amend existing law funded by recipients of Legal Services Corporation funding); *NAACP v. Button*, 371 U.S. 415, 419 (1963) (concerning

prohibition on "improper solicitation" of legal business); *In re Primus*, 436 U.S. 412, 414 (1978) (concerning prohibition on certain forms of solicitation); *Bhd. of R.R. Trainmen v. Virginia*, 377 U.S. 1, 1 (1964) (concerning attempt to prevent union's solicitation and recommendation of legal counsel to its members); *United Mine Workers*, 389 U.S. at 218 (concerning attempt to prevent union from hiring in-house counsel on salary basis to provide legal advice and representation to union members); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 577 (1971) (concerning attempt to prevent union from recommending counsel to its members and seeking to limit fees charged by recommended counsel).[4]

Plaintiffs also cite *Detraz v. Fontana*, 416 So.2d 1291 (La. 1982). Although the Louisiana statute at issue in that case was in some respects similar to section 1021.11, in that it required unsuccessful litigants to pay the attorney's fees of governmental defendants, the Louisiana statute also required plaintiffs to post a bond for such fees before filing suit. The court's analysis largely turned on that aspect of the statute—that is, the requirement that plaintiffs pay some amount merely to enter the courtroom—not the possibility of a fees award at the end of a case. *Id.* at 1296-97 (discussing similar bond requirements and prepayment of court fees and costs). And,

---

[4] Plaintiffs also cite *In re Workers Compensation Refund*, 842 F. Supp. 1211 (D. Minn. 1994), but that case involved a very different type of state law. Minnesota state law created the Workers Compensation Reinsurance Association ("WCRA"), to which all workers' compensation insurers and self-insured employers were required to belong. *Id.* at 1213. Those members were required to purchase workers' compensation reinsurance from WCRA. *Id.* At issue in that case was a state law requiring the WCRA to "reimburse the state for any and all costs, disbursements, and attorney fees in any way incurred by the state as part of or resulting from any litigation, including administrative or civil actions, involving the enforcement or validity of [the Workers Compensation and Reinsurance Act of 1993]." 1993 Minn. Laws ch. 361, § 10 (available at https://www.revisor.mn.gov/laws/1993/0/Session+Law/Chapter/361/). Accordingly, this law did not involve a statute requiring plaintiffs to pay the attorney's fees of prevailing government defendants, but a requirement that a trade association pay fees related to a statute governing the work of its members, regardless of whether they were parties to the particular litigation.

regardless, the Louisiana Supreme Court's decision is obviously not binding on this Court.[5]

Plaintiffs also argue that the fee-shifting provisions of section 1021.11 constitute content-based and viewpoint discrimination in violation of the First Amendment. Here again, the statute is entitled to a presumption of constitutionality and Plaintiffs must demonstrate otherwise. *See Decker Coal*, 8 F.4th at 1133. They have not. State and federal law both provide for fee-shifting in only selective circumstances; providing for fee-shifting for certain categories of claims and not others is commonplace. *Compare* Cal. Lab. Code § 1194 (fee-shifting for minimum wage or overtime violations) *and* Cal. Gov't Code § 12965(c)(6) (fee-shifting for certain harassment and discrimination claims) *with Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1259 (2012) (fee-shifting not specifically authorized for claims based on failure to provide statutorily required meal or rest breaks), *and Moskowitz v. Am. Savings Bank*, 37 F.4th 538, 546 (9th Cir. 2022) (noting that Telephone Consumer Protection Act "does not provide for the award of attorney's fees to the prevailing party"). Further, one-way fee-shifting provisions are not uncommon. *See*, *e.g.*, 42 U.S.C. § 1988(b) (prevailing party "other than the United States" may recover fees); 5 U.S.C. § 552(a)(4)(E) (allowing successful FOIA claimants fees); Cal. Lab. Code § 1194 (allowing employees fees against employers); Fla. Stat. § 627.428 (allowing prevailing policy holders fees against insurer). None of these provisions amounts to content- or viewpoint-based discrimination; rather, each reflects a legislative judgment about where to assign the costs and risks of litigation in particular areas of the law. It is

---

[5] Plaintiffs also cite *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 91 Cal. App. 4th 859 (2001). But that case held only that requiring the plaintiff to pay the defendant's attorney's fees was inappropriate on the particular facts of that case. *Id.* at 873-74. Notably, it did not hold that such fees are never available or invalidate the California statute that provided for fee-shifting against an unsuccessful plaintiff.

thus unsurprising that none of the cases cited by Plaintiffs concern viewpoint discrimination with respect to fee-shifting statutes.

As noted above, the Governor and others have previously expressed doubts about the constitutionality of the nearly identical fee-shifting provision of Texas's S.B. 8 and in particular how it may affect access to the courts. Nonetheless, absent authority invalidating such provisions, and pursuant to the presumption of constitutionality afforded statutes, *see Decker Coal*, 8 F. 4th at 1133, the Governor is defending the constitutionality of this act of the Legislature.

### 3. <u>Section 1021.11 Does Not Violate The Equal Protection Clause</u>

Plaintiffs' Equal Protection claim is derivative of their First Amendment and other constitutional claims. Their Equal Protection claim is viable only if the Court determines section 1021.11 does in fact unconstitutionally infringe their right to access the courts in the first place; if it does not, then any distinction among types of underlying legal claims is not constitutionally meaningful. The fundamental right to access the courts is either infringed by a procedural law or it is not, regardless of whether the claim sought to be asserted in court is also a fundamental right. As such, the arguments in Section I(A)(2) apply equally to Plaintiffs' Equal Protection claim.

For the reasons explained above, the fundamental premise of the Equal Protection claim is flawed. Providing for fee-shifting for *some* types of claim does not obligate a state to provide fee-shifting for *all* claims. *See* Section I(A)(2), *supra* (describing patchwork of fee-shifting statutes). Plaintiffs' suggestion that fee-shifting must operate equally for all categories of claims cannot be squared with the American Rule and the numerous exceptions that states have developed over time that treat different categories of claims differently. *See generally* Henry Cohen, Cong. Research Serv., 94-970, Awards of Attorneys' Fees by Federal Courts and Federal Agencies at 1 (June 20, 2008) (noting American Rule and "numerous statutory exceptions" as of 2008).

1    Finally, there is no merit to Plaintiffs' suggestion that "Section 1021.11
2    affects not just challenging gun laws but also exercising gun rights," Pls.' Br. at 10,
3    Dkt. 10 (*South Bay*)—i.e., that section 1021.11 violates equal protection by
4    "classif[ying] in a way that impinges on the fundamental Second Amendment right
5    itself," Pl's Br. at 21, Dkt. 14 (*Miller*).  Assessing whether a law affects the Second
6    Amendment right begins with the threshold question whether "the Second
7    Amendment's plain text covers an individual's conduct" at all.  *N.Y. State Rifle & Pistol*
8    *Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022); *see, e.g.*, *Defense Distributed v. Bonta*,
9    No. 22-cv-6200, 2022 U.S. Dist. LEXIS 195839 (C.D. Cal. Oct. 21, 2022) (holding that
10   Second Amendment's plain text does not cover right to self-manufacture of firearms),
11   *adopted by* 2022 U.S. Dist. LEXIS 198110 (C.D. Cal. Oct 24, 2022).  And "the right of
12   the people to keep and bear Arms" covers the possession and carrying of firearms, not
13   questions of civil procedure.  U.S. Const. amend. II; *compare* U.S. Const. amend. VII.
14   Section 1021.11 does not regulate who may keep or bear what firearms, when or where
15   or how; it regulates litigation.  So section 1021.11 itself cannot discriminate against the
16   *exercise* of the right to keep and bear arms.

### 4.    Section 1021.11 Does Not Violate Any Right To Counsel

18   The *South Bay* plaintiffs also contend that section 1021.11 violates their
19   "right to counsel of their choosing."  Pls' Br. at 8-9, Dkt. 10 (*South Bay*).  The reason,
20   they say, is that the threat of attorney's fees might dissuade counsel from taking on their
21   cases or prompt counsel to violate their duty of loyalty to their client.  But in that
22   respect, section 1021.11 is no different from statutes and court rules providing for
23   monetary sanctions for litigation misconduct, or from rules of professional
24   responsibility that make clear that attorneys should *not* place a "client's interest in
25   vigorously pursuing the case" above all other interests.  Pls.' Br. at 9.  Those rules do
26   not violate the Fourteenth Amendment for the same reason section 1021.11 does not,
27   and South Bay cites no case in which a provision creating economic disincentives for
28

INTERVENOR-DEFENDANT'S SUPPLEMENTAL BRIEF
No. 3:22-cv-1446-BEN-JLB & No. 3:22-cv-1461-BEN-JLB

counsel was held to violate a constitutional right to counsel. Besides, while litigants may have a constitutional right not to have *the state* veto their chosen counsel, and while it is constitutionally impermissible for the state to prohibit counsel from representing particular classes of clients or in matters involving specific claims, *see supra* at 12, litigants have no right to any particular counsel concluding that it is worthwhile to take their case in the first place.

### 5. Section 1021.11 Is Not Void For Vagueness

The *South Bay* plaintiffs next argue that S.B. 1327 is unconstitutionally vague. Pls.' Br. at 13-15, Dkt. 10 (*South Bay*). That contention lacks merit.

"The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment," and the Supreme Court has thus "expressed greater tolerance of enactments with civil rather than criminal penalties." *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). A civil statute is void for vagueness only in the rare circumstance when it is "'so vague and indefinite as really to be no rule or standard at all,'" or when "a person of ordinary intelligence could [not] understand" it. *Fang Lin Ai v. United States*, 809 F.3d 503, 514 (9th Cir. 2015) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)). Section 1021.11 clears that extremely low bar. Its scope is clear: It applies only to suits involving challenges to "any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms." Cal. Code Civ. Proc. § 1021.11(a).

Plaintiffs express confusion over what counts as a law regulating "firearms," pointing to California's ban on large-capacity magazines, Penal Code section 32310, as an illustrative example. But there is nothing indefinite about applying section 1021.11 to a suit challenging that law: The large-capacity magazines ban appears in the Penal Code's title on "Firearms," in the division on "Special Rules Relating to Particular Types of Firearms or Firearm Equipment," and a restriction on the ammunition that may be used in a firearm is a restriction on firearms. Cal. Penal Code

§ 32310.  In any event, virtually any statute will present "certain edge cases" in application, Pls.' Br. at 15, but that has never been enough to hold a civil statute void for vagueness.

Additionally, South Bay's reliance on *Kolender v. Lawson*, 461 U.S. 352 (1983), is misplaced.  *Kolender*'s discussion of vague statutes inviting "arbitrary enforcement" arose in the context of a "a penal statute defin[ing] [a] criminal offense," where a very different vagueness standard applies in light of the risk of abuse by "policemen, prosecutors, and juries."  *Id.* at 357-58.

### 6.  <u>Section 1021.11 Is Not A Bill Of Attainder</u>

Finally, the *South Bay* plaintiffs contend that S.B. 1327 "'inflicts punishment . . . without a judicial trial'" and thus "operates as a Bill of Attainder."  Pls.' Br. at 16-18, Dkt. 10 (*South Bay*) (quoting *Seariver Mar. Fin. Holdings v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002)).  That argument fails from the start because an award of attorney's fees is not "punishment," and South Bay points to no case holding otherwise.  Attorney's fees pose a burden, but "[n]ot every law which burdens some persons or groups is a bill of attainder," and "[t]he 'clearest proof' is required before courts can conclude that a legislative enactment is as a bill of attainder."  *Franceschi v. Yee*, 887 F.3d 927, 941 (9th Cir. 2018).  The legislative purpose of fee-shifting statutes (including 42 U.S.C. § 1988) is to create additional incentives or disincentives to litigation at the outset, not to punish the losing party for losing.  S.B. 1327 is no different in that respect from any other fee-shifting statute.

### B.  **Plaintiffs Have Not Established The Other Permanent Injunction Factors**

### 1.  <u>Plaintiffs Have Not Been Irreparably Harmed</u>

Section 1021.11 should rise or fall in tandem with S.B. 8.  The Attorney General's commitment not to seek fees under section 1021.11 until challenges to S.B. 8 are resolved ensures this outcome.

Because the Attorney General will not seek fees in connection with any suit filed before the date on which a decision ultimately upholding the constitutionality of the fee-shifting provisions of S.B. 8 is affirmed on appeal (or the time to file an appeal expires), no Plaintiffs currently face any threat of harm from the state officials who would be subject to any injunction issued in this case. And Plaintiffs will know at the time they file any future lawsuit whether the condition has been met. Until then, they lack any ripe claim or risk of irreparable harm, and their requested relief should be denied without prejudice to renewing their claims if and when the Attorney General's enforcement approach changes.

Plaintiffs also suggest that a decision by this Court will insulate them from the risk of fee-shifting under section 1021.11 by successful local government defendants. But they have identified no case supporting the authority of a federal court to enjoin the conduct of non-parties to a lawsuit. Indeed, except in specific circumstances not present here, such an injunction is impermissible. Fed. R. Civ. P. 65(d) (injunction may bind only non-party that is "in active concert or participation with [a party or a party's officers, agents, servants, employees, and attorneys]"). Because the Attorney General has no authority to direct or control conduct of local officials such as city attorneys that would defend civil actions challenging local firearms ordinances,[6] an injunction against the Attorney General would not redress that alleged irreparable harm. Further, to the extent that Plaintiffs hope declaratory judgment in this case will protect them from the use of section 1021.11 by non-party local governments, they are mistaken. Res judicata flows only as against parties to the litigation. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016) (claim preclusion requires "identity or privity between the parties"). Because the relief they seek will not remedy

---

[6] Article V, section 13 of the California Constitution provides that the Attorney General "shall have direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law" related to enforcement of the state's criminal laws. Cal. Const. art. V, § 13. The state constitution does not provide analogous authority for civil matters.

this aspect of the alleged harm—the threat of enforcement by local officials—it cannot support injunctive relief.

Accordingly, the alleged harm Plaintiffs identify—a chilling effect on their desire to pursue challenges to gun laws—would arise, as to any state law challenge, only after a court has upheld the constitutionality of Texas's mirror-image statute and, as to any local ordinance challenge, only based on conduct of nonparties who are not subject to any injunction this court may issue. Under these circumstances, the equities tip against entering what would effectively be an unnecessary injunction that does not materially address the only possible alleged injury that is non-speculative or non-hypothetical at this stage.[7]

### 2. The Balance Of Equities And Public Interest Weigh Against An Injunction

Because Plaintiffs face no imminent threat of harm that will be redressed by the requested preliminary or permanent injunction, the equities weigh against enjoining this duly enacted statute. *See*, *e.g.*, *Decker Coal*, 8 F.4th at 1133 ("Ordinarily, statutes are entitled to the general presumption of constitutionality."). And plaintiffs cannot, under these circumstances, demonstrate that the equities tip in their favor or that an injunction is in the public interest. *See Burgos v. Long*, No. 2:11-cv-01906-JAM-JFM, 2013 U.S. Dist. LEXIS 155177 at *33 (E.D. Cal. Oct. 29, 2013) (finding that "the balance of equities and public interest weigh against injunctive relief" because "[p]laintiff will not suffer cognizable harm if the injunction is not issued").

## II. THIS COURT LACKS ARTICLE III JURISDICTION

The Governor adopts the prior arguments raised by the Attorney General that this Court lacks jurisdiction because Plaintiffs do not have standing in light of the Attorney General's commitment not to seek fees from any plaintiff until and unless S.B.

---

[7] The Governor concedes that Plaintiffs satisfy the second factor supporting a permanent injunction because monetary damages are unavailable as against state officials as defendants in their official capacity in federal court.

8 is upheld. *See* Def.'s Opp. Mot. Prelim. Inj. at 16-19, Dkt. 19 (*South Bay*). Indeed, another district court recently ruled that a similarly situated plaintiff challenging section 1021.11 lacked Article III standing because of the Attorney General's commitment. Order Den. Pl.'s Mot. for Prelim. Inj., *Abrera v. Newsom, et al.*, No. 2:22-cv-1162, 2022 U.S. Dist. LEXIS 222380 at *5 (E.D. Cal. Dec. 8, 2022). The Governor recognizes the Court has already ruled to the contrary, but the Court may reconsider in light of *Abrera*, and the Governor raises this argument here to preserve it regardless.

## **CONCLUSION**

In light of Defendants' commitment not to seek fees under section 1021.11, the Court currently lacks jurisdiction to entertain Plaintiffs' claims, and the Court should not grant any relief on that basis. Alternatively, the Court should deny Plaintiffs' request for a preliminary or permanent injunction and enter judgment for Defendant for the reasons explained above.

Dated: December 12, 2022

Respectfully submitted,

OLSON REMCHO, LLP

s/ Thomas A. Willis
Attorneys for Intervenor-Defendant
Governor Gavin Newsom in his official
capacity as Governor of the State of California
Email: twillis@olsonremcho.com

(00478698-5)

INTERVENOR-DEFENDANT'S SUPPLEMENTAL BRIEF
No. 3:22-cv-1446-BEN-JLB & No. 3:22-cv-1461-BEN-JLB