BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Ave, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
JOSEPH O. MASTERMAN*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, Attorney General of California, et al., <br><br> Defendants, <br> and <br><br> GAVIN NEWSOM, Governor of the State of California, <br><br> Intervenor-Defendant. | Case No.:  3:22-cv-01446-BEN-MDD <br><br> **PLAINTIFFS' CONSOLIDATED BRIEF IN RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANT'S SUPPLEMENTAL BRIEFS** <br><br> Date: December 16, 2022 <br> Time: 10:00 a.m. <br> Courtroom 5A (5th Floor) <br> Hon. Roger T. Benitez |

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ..................................................................... ii

3  INTRODUCTION ................................................................................1

4  ARGUMENT ......................................................................................2

5  I.  The Governor Offers No Colorable Defense Of Section 1021.11. .................2

6  A.  As Intervenor On Behalf Of The State, The Governor Is Still Saddled
    By *The State*'s Argument To The Supreme Court That This Fee-

7  Shifting Regime Is Unconstitutional. ....................................................2

8  B.  The Governor's Borrowed Preemption Arguments Fail. .....................3

9  C.  The Governor Cannot Overcome Plaintiffs' Showing That Section
    1021.11 Violates The First Amendment In Multiple Respects. ...........6

10

11  1.  The *Premier* Case Has No Bearing On The Issues Here...........7

12  2.  The Governor's Attempt To Analogize Section 1021.11 To Other
    Fee-Shifting Regimes Supports, Rather Than Undermines,
    Plaintiffs' Arguments. ..............................................................8

13  3.  The Governor Wholly Fails To Distinguish Plaintiffs' Case
    Support For Broad Protection Of Petition And Association

14  Rights..................................................................................9

15  4.  The Governor Cannot Justify Section 1021.11's Content-Based
    Speech Restriction. .................................................................13

16  D.  Section 1021.11 Also Violates The Equal Protection Clause.............15

17  II.  The Governor's Harm And Jurisdiction Arguments Are Foreclosed. ..........16

18  CONCLUSION ................................................................................16

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Abrera v. Newsom*, No. 2:22-cv-1162,
  2022 WL 17555524 (E.D. Cal. Dec. 9, 2022) ................................................... 16

*BE & K Const. Co. v. NLRB*,
  536 U.S. 516 (2002) ..................................................................................... 6

*Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*,
  377 U.S. 1 (1964) .............................................................................. 10, 11

*Clark v. Jeter*,
  486 U.S. 456 (1988) ............................................................................ 15, 16

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ............................................................................... 3, 5

*Detraz v. Fontana*,
  416 So.2d 1291 (La. 1982) ................................................................... 6, 12

*Fox v. Vice*,
  563 U.S. 826 (2011) ................................................................................. 12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................. 14

*Hsu v. Abbara*,
  9 Cal. 4th 863 (1995) ................................................................................ 9

*In re Primus*,
  436 U.S. 412 (1978) ................................................................. 10, 12, 13

*In re Workers Comp. Refund*,
  842 F. Supp. 1211 (D. Minn. 1994) ........................................................ 13

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ............................................................................ 8

*Legal Services Corp. v. Velazquez*,
  531 U.S. 533 (2001) ........................................................... 7, 8, 11, 13

*NAACP v. Button*,
  371 U.S. 415 (1963) ..................................................... 7, 9, 10, 12, 13

*Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*,
  814 F.2d 358 (7th Cir. 1987) ..................................................................... 7

*Puente Arizona v. Arpaio*,
  821 F.3d 1098 (9th Cir. 2016) ................................................................... 4

*Reynolds Metals Co. v. Alperson*,
  25 Cal. 3d 124 (1979) ............................................................................... 9

*Santisas v. Goodin*,
  17 Cal. 4th 599 (1998) ............................................................................... 9

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989) ................................................................................... 4

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
  389 U.S. 217 (1967) ................................................................................. 11

*United States v. Salerno*,
   481 U.S. 739 (1987) ..................................................................................4

*United Transp. Union v. State Bar of Mich.*,
   401 U.S. 576 (1971) ................................................................................11

*Varian Med. Sys., Inc. v. Delfino*,
   35 Cal. 4th 180 (2005).............................................................................8

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021) ........................................................................3, 5, 6

**Statutes**

5 U.S.C. § 552(a)(4)(E) .................................................................................14

42 U.S.C. § 1988 .............................................................................................3

42 U.S.C. § 1988(b)........................................................................................14

CAL. CODE CIV. PROC.
   § 425.16 ....................................................................................................8
   § 1021.11 ..................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 15, 16

CAL. CIV. CODE § 1717 ...................................................................................9

CAL. GOV'T CODE § 12965 ...........................................................................14

CAL. LAB. CODE § 1194 ................................................................................14

FLA. STAT. § 627.428 ....................................................................................14

**Other Authorities**

Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs, *Whole Woman's Health v. Jackson*, Nos. 21-463, 21-588, 2021 WL 5016707 (Oct. 27, 2021) ...................2

Don Thompson, *New California gun control law mimics Texas abortion measure*, July 22, 2022 (ABC News), https://abcn.ws/3T486qa......................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendants have made this case simple to resolve. The Attorney General still does not defend Section 1021.11. The only new argument in his supplemental brief is that this Court should cede its authority to the federal courts of Texas. "If the courts in the pending litigation in Texas ultimately hold that the fee-shifting provision in section 4 of SB 8 is constitutional and enforceable," he says, then "the identical provision in SB 1327 should be valid and enforceable to the same extent," *even if* this Court has already declared otherwise. Defs.' Supp. Br., ECF No. 29, 10:5–8. Needless to say, it is this Court's responsibility to adjudicate the claims and issue the appropriate relief in this case. The Attorney General's brief therefore need not be addressed further.

For his part, the Governor gestures at possible defenses of Section 1021.11. But he plainly does not believe that Section 1021.11 is constitutional. From the first line of his brief, he describes Texas's S.B. 8 as "novel and cynical," much as he has said elsewhere and as the State, which he represents here, has said in other court filings. Intervenor-Defs.' Supp. Br., ECF No. 35, 1:2 ("Governor's Br."). Yet it is common ground among the parties that Section 1021.11's one-way fee-shifting regime is *modeled on S.B. 8's. See id*. 2:22–24 (adopting by reference the Background section of the Attorney General's initial opposition brief, which describes Section 1021.11 as a reaction to S.B. 8 that closely tracks S.B. 8).

By intervening here, the Governor has thus offered further proof that Section 1021.11 is an act of political retribution that he intends to follow through on, at the expense of California citizens' fundamental rights, if S.B. 8 is upheld. Meanwhile, he has failed to offer any colorable argument that Section 1021.11 is constitutional. It is not. The Court should declare Section 1021.11 unconstitutional and permanently enjoin all Defendants from enforcing it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.     The Governor Offers No Colorable Defense Of Section 1021.11.**

**A.     As Intervenor On Behalf Of The State, The Governor Is Still Saddled By *The State*'s Argument To The Supreme Court That This Fee-Shifting Regime Is Unconstitutional.**

The Governor has intervened "in his official capacity . . . to represent the interests of the State of California." Mot. To Intervene, ECF No. 31-1, 1:2–4. His intervention brief claims that, "[w]hile the Attorney General has determined that he is constrained in his defense of section 1021.11 by prior positions *he expressed* in litigating against Texas's S.B. 8, the Governor is not." *Id*. 1:19–21 (emphasis added). But this premise is faulty. Attorney General Bonta did not join the amicus brief in support of the petitioners in litigation over S.B. 8 to express "his" own "positions."

Rather, *the State of California* joined the amicus brief to argue against the constitutionality of S.B. 8, including its fee-shifting provision. Br. of Mass. et al. as *Amici Curiae* in Supp. of Pet'rs, *Whole Woman's Health v. Jackson*, Nos. 21-463, 21-588, 2021 WL 5016707 (Oct. 27, 2021). The State of California joined 20 other states on the brief, along with the Attorney General of North Carolina, who, by contrast, *did* appear separately from the State of North Carolina. Here, Governor Newsom argues that intervention is appropriate "to assert the State of California's interest in ensuring parity between" Section 1021.11 and S.B. 8. Mot. to Intervene 7:22–23. But the State of California has already staked its claim in the United States Supreme Court: S.B. 8's fee-shifting regime is unconstitutional, so Section 1021.11's copycat regime must be, too.

As a result, the Governor faces the same dilemma the Attorney General faces, which explains his unenthusiastic support of the law. Even while asserting that "there are arguments that" Section 1021.11 is constitutional, he acknowledges that "fee-shifting provisions like S.B. 8's," and hence like Section 1021.11's, "are outrageous and objectionable." Governor's Br. 8:18–19. As he must: Section 1021.11's fee-

shifting regime is unconstitutional for the same reasons the State told the Supreme Court in *Whole Woman's Health*, among others.

### B.     The Governor's Borrowed Preemption Arguments Fail.

The only unqualified defense that the Governor offers is against Plaintiffs' preemption claim. But even this argument is barely developed. While repeating his criticisms of Texas's S.B. 8, the Governor's preemption argument is comprised mainly of a block-quote from Texas's preemption arguments in defense of S.B. 8. *See* Governor's Br. 5:15–6:9. These arguments are meritless.

There are different varieties of preemption. Plaintiffs have asserted the "obstacle" variety of "conflict" preemption, *i.e.*, that Section 1021.11 stands as an obstacle to the purposes of 42 U.S.C. § 1988. *See* Pls.' Mem. in Support of Mot. for Prelim. Inj., ECF No. 14-1, 8:19–13:17 ("Pls.' Mem."). In response, the Governor asserts that "there is no conflict" because "nothing in S.B. 1327 prevents simultaneous awards of attorney's fees to a plaintiff under § 1988 and to a defendant under state law in a mixed-result case." Governor's Br. 6:12–14. This might be a response to a claim of "impossibility" preemption, but that is a different type of conflict preemption. Courts may "find preemption where it is impossible for a private party to comply with both state and federal law," or where, "under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (cleaned up). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id*.

As the Supreme Court has long recognized, the purpose of Section 1988 is to ensure the effective enforcement of civil rights by shifting attorney's fees to prevailing plaintiffs in suits under 42 U.S.C. § 1983. *See* Pls.' Mem. 10:15–11:26 (quoting several cases and congressional reports). Section 1021.11, by contrast, *discourages* private civil-rights suits under Section 1983 by shifting fees the opposite way.

Technically speaking, a court could shift fees under Section 1988 where plaintiffs have "prevailed on a significant issue in the litigation and have obtained some of the relief they sought," *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989), while also shifting fees to the defendants under Section 1021.11 because the plaintiffs did not obtain all the relief they sought—making compliance with both laws not impossible. But Section 1021.11 is no less an obstacle to Section 1988. Even in this hypothetical case, the plaintiffs would be in the same position, fee-wise, that they would be in without Section 1988. The fees that they recover under Section 1988 would defray only the fees that they incurred. If forced to pay the defendants' attorney's fees, then they will still have paid for attorneys (just not their own) and the disincentive that Section 1988 seeks to remove will remain. *See* Pls.' Mem. 12:3–10.

The Governor further argues that the preemption claim fails because Plaintiffs have brought a facial preemption claim but have purportedly not met the *Salerno* standard, which would require a showing that Section 1021.11 would be preempted in all sets of circumstances. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). The Ninth Circuit has "chosen to continue applying" this standard to facial preemption claims while recognizing that a lower standard (preemption in a "substantial number of applications") might apply instead. *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016). In any event, Section 1021.11 is an obstacle to Section 1988, and is accordingly preempted, in all circumstances.[1] Section 1988 always incentives civil-rights plaintiffs to sue, awarding attorney's fees to defendants in only limited cases. *See* Pls.' Mem. 9:11–17. Section 1021.11 always disincentivizes certain civil-rights plaintiffs to sue. And plaintiffs will face that tension in every case where Section 1021.11 applies.

---

[1]      The *Miller* Plaintiffs have not argued that "section 1021.11 may be preempted in only some instances." Governor's Br. 6:19. The page of our brief that the Governor cites for that proposition does not contain such an argument and is not even part of our preemption section.

The Governor's argument is, effectively, that obstacle preemption cannot support a facial challenge because an obstructing state law might not conflict with a federal statute's purpose in a particular case. This argument directly conflicts with *Crosby*, where the Supreme Court held that a state sanctions law posed an impermissible "obstacle to the accomplishment of Congress's full objectives" embodied in a federal sanctions law by "penalizing individuals and conduct that Congress ha[d] explicitly exempted or excluded." 530 U.S. at 373, 378. In the process, the Court rejected the argument that "there is no real conflict . . . because some companies may comply with both sets of restrictions," explaining that this fact "does not mean that the state Act is not at odds with achievement of the federal decision" on the subject. *Id*. at 379–80. "Conflict is imminent when two separate remedies are brought to bear on the same activity," and "the inconsistency of sanctions [t]here undermine[d] the congressional calibration of force." *Id*. at 380 (internal brackets and quotation marks omitted). Here, the inconsistency of fee-shifting between Section 1021.11 and Section 1988 undermines, and indeed reverses, the congressional calibration of financial burdens in civil-rights suits.

Finally, the Governor says that, "as in *Whole Woman's Health*, no part of the analysis of this procedural mechanism turns on the underlying constitutional right invoked by a plaintiff." Governor's Br. 6:14–16. The Governor does not say why this is relevant to preemption, and he cites to a portion of the Supreme Court's opinion related not to fee-shifting—which the Supreme Court did not address—but to a justiciability question not at issue here. Regardless, the preemption analysis "turns" on the plaintiff's particular claim insofar as Section 1021.11 *itself* turns on the nature of the claim. The fee-shifting provision applies only where plaintiffs challenge state or local firearm regulations. In all such cases, Section 1021.11 subjects the plaintiff to potentially ruinous fee liability, in direct contravention of Section 1988, and is therefore preempted.

//

1

2

### C.   The Governor Cannot Overcome Plaintiffs' Showing That Section 1021.11 Violates The First Amendment In Multiple Respects.

Even if Section 1021.11 were not preempted, it would still be unenforceable under the First Amendment. The Governor begins his First Amendment argument by acknowledging that Section 1021.11 "at least raises serious constitutional questions" and then recounting the various arguments from the Texas case, including from California's own amicus brief, as to why this fee-shifting law *does* violate the First Amendment. Governor's Br. 7:10–8:5. The Governor repeats California's argument that "SB 8's fee-shifting provision was an 'attempt[] to thwart judicial review.'" *Id*. 7:15–21. And he stresses that the First Amendment arguments against S.B. 8 and Section 1021.11 "are rooted in the principle that the 'right of access to the courts is but one aspect of the right to petition,' and the right to petition is 'one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Id*. at 7:25–27 (quoting *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002)).

But that was then. Now the Governor claims to be arguing the other side. The Governor attempts to justify his about-face by asserting that these arguments "did not move the Supreme Court in" *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). *Id*. 8:6–7. But this ignores that the Court's majority did not even *discuss* S.B. 8's fee-shifting provision, let alone address its constitutionality; instead, the Court resolved several threshold issues (namely sovereign immunity and justiciability) and sent the case back to the district court. *See Jackson*, 142 S. Ct. at 539. The Governor separately states that "no court has *yet* held that this type of fee-shifting provision is unconstitutional." Governor's Br. 8:19–20 (emphasis added). This is because, until S.B. 8 and S.B. 1327, no legislature had enacted such a brazen law targeted at deterring particular types of civil-rights claims. The next closest was the Louisiana scheme *struck down* in *Detraz v. Fontana*, 416 So.2d 1291 (La. 1982).

Governor Newsom practically invites the Court to invalidate Section 1021.11 by starting his First Amendment arguments with the observation that, under "the *current* state of the law, there are arguments" that one-way fee-shifting schemes like Section 1021.11 are constitutional. Governor's Br. 8:20–21 (emphasis added). He then proceeds to raise a series of brief points, each of which ignores the core First Amendment interests that Section 1021.11 infringes and the injury it inflicts. None of these cursory arguments withstand serious analysis.

### 1.    The *Premier* Case Has No Bearing On The Issues Here.

The Governor notes first that the Texas Attorney General quoted a provocative passage from *Premier Elec. Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987), in support of S.B. 8 in litigation now pending in the Western District of Texas. Governor's Br. 8:21–9:1.

The *Premier* decision has nothing to do with whether Section 1021.11's fee-shifting regime is constitutional. That case involved a long-running multi-jurisdictional antitrust dispute over the use of union dues. 814 F.2d at 359–60. Plaintiffs there had to defend several state court lawsuits that were part of the defendants' anti-competitive scheme, so plaintiffs sought to recoup their defense fees in those cases as part of their antitrust *damages*. *Id.* at 361, 371–76. Defendants in turn argued that being forced to pay those fees (trebled, no less) infringed their First Amendment right to undertake litigation, and the Seventh Circuit properly concluded that defendants could not use the First Amendment as a shield to paying antitrust damages. *Id.* at 371–74. The Seventh Circuit's statement that the First Amendment does not have "anything to say about fee-shifting statutes," 814 F.2d at 373, was wholly gratuitous. As Plaintiffs have shown, a series of Supreme Court decisions, from *Button* to *Velasquez*, demonstrate that such a categorical statement cannot be correct. *Premier*'s narrow circumstances offer no guidance on the questions here.

**2.**     **The Governor's Attempt To Analogize Section 1021.11 To Other Fee-Shifting Regimes Supports, Rather Than Undermines, Plaintiffs' Arguments.**

The Governor next argues that paying for litigation is just part of the litigation system and observes there is "no First Amendment right *to* prevailing party fees for a plaintiff, notwithstanding that requiring parties to pay their own way in court (as under the American Rule) imposes a meaningful burden on access to justice." Governor's Br. 9:1–4 (emphasis in original). That is neither here nor there. There is unquestionably a First Amendment right to access the courts, which, as Plaintiffs have shown, Section 1021.11 chills. For Section 1021.11 is a radical departure from the pay-your-own-way American Rule. Forcing only one category of civil-rights plaintiffs (those challenging firearms regulations) to pay the government's fees if they lose on just one of their claims, even if they win on all the rest, is an abusive effort designed to shield the government from defending its laws. *Cf. Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) (the government cannot "insulate [its] interpretation of the Constitution" by "impos[ing] rules and conditions which in effect insulate its own laws from legitimate judicial challenge").

The Governor analogizes Section 1021.11 to other fee-shifting laws that, he claims, "merely increase[] the potential cost of litigating." Governor's Br. 9:8–10. But the Governor's reliance on California's anti-SLAPP statute, Code of Civil Procedure § 425.16 ("Section 425.16"), strongly undermines his argument, because that statute is designed to "prevent and deter 'lawsuits . . . brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180 (2005). To that end, the defendant-side fee-shifting provision is "intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights,'" and to "encourage[] private representation in SLAPP cases." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001). So, whereas Section 425.16 authorizes fee-shifting to *promote* petitioning

rights, Section 1021.11 cuts entirely the other direction. It stands as an obstacle to litigants who wish to assert their constitutional rights and interferes with the ability to secure counsel to represent them.

The Governor also cites California Civil Code section 1717, which establishes a rule of "mutuality" for contractual fee-shifting provisions: If a contract contains a unilateral fee-shifting provision, a court will enforce the provision reciprocally among the parties to a contract. *Santisas v. Goodin*, 17 Cal. 4th 599, 610 (1998); *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979). The point of the statute is to ensure fairness between contracting parties and place them on equal footing when it comes to fee claims. *Hsu v. Abbara*, 9 Cal. 4th 863, 870–71 (1995). Section 1021.11 seeks precisely the opposite result by tilting the playing field toward government defendants and against civil-rights litigants.

### 3. The Governor Wholly Fails To Distinguish Plaintiffs' Case Support For Broad Protection Of Petition And Association Rights.

The Governor attempts to brush away the series of Supreme Court cases discussed in Plaintiffs' preliminary injunction brief, asserting that those cases involved efforts to "outright *prohibit*" petitioning activity, whereas Section 1021.11 "only add[s] to the cost of bringing certain types of claims." Governor's Br. 9:23–24 (emphasis in original). Although this characterization is unduly narrow, as illustrated below, the Governor fails to consider how—as Plaintiffs' experience confirms— Section 1021.11 does far more than make it a little more expensive to litigate. Indeed, Section 1021.11 operates as a "prohibition" on firearms litigation and imperils the associational rights of firearms advocacy groups and is thus unconstitutional even on the Governor's terms.

The Supreme Court cases that Governor Newsom so briskly dismisses establish that the First Amendment is essential to securing access to the courts to preserve civil rights, particularly for groups unable to protect their rights through the political channels. In *NAACP v. Button*, 371 U.S. 415 (1963), the Court established that

Virginia's deterrence of civil-rights litigation—through selective enforcement of its general ban on "improper solicitation" of legal business—violated the NAACP's petition rights. *Id*. at 429–30, 433, 435–36 ("The threat of sanctions may deter the[] exercise [of First Amendment freedoms] almost as potently as the actual application of sanctions."). Here, California is being far more straightforward in its goal. Indeed, the Governor told the cameras that he signed S.B. 1327 (which included Section 1021.11's fee-shifting regime) because "[w]e're sick and tired of being on the defense in this movement. It's time to put them on the defense." Don Thompson, *New California gun control law mimics Texas abortion measure*, July 22, 2022 (ABC News), https://abcn.ws/3T486qa.

The Court's decision in *In re Primus*, 436 U.S. 412 (1978), built on *Button*. South Carolina had relied on an antisolicitation rule to discipline an ACLU attorney seeking to represent a woman who had been forcibly sterilized. *Id.* at 416–17. The Court's analysis puts into focus the harm Section 1021.11 inflicts on Plaintiffs' First Amendment rights. Just like the NAACP in *Button*, the ACLU's pursuit of its political and ideological goals through civil-rights litigation implicated the "interests of free expression and association," and was therefore protected. *Id.* at 426–28; *see id.* at 422–26 (discussing *Button*). This reasoning applies with equal force to the Plaintiffs here, for whom "'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association.'" *Id.* at 428 (quoting *Button*, 371 U.S. at 429, 431). Viewed through that lens, it becomes clear why "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *Id.* at 426.

A series of union cases similarly recognize that these protections apply equally when the government erects barriers on litigation that chill protected activity. *See Bhd. of R.R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 6–7 (1964) (relying on *Button* and holding that a state cannot "handicap[]" "the right to petition the court" through indirect regulation—there a restriction on solicitation of legal business and

through a legal aid program—that "infringe[s] in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest"); *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 221–23 (1967) (Illinois violated the First Amendment by attempting to restrict a union's provision of legal services to its members through the "indirect restraint[]" of labeling it the "unauthorized practice of law"); *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 580–81, 585 (1971) ("the First Amendment forbids . . . restraints" that effectively prevent groups from "unit[ing] to assert their legal rights"). "The common thread running through" these decisions "is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *Id*. at 585.

And in *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001), the Court struck down a federal law that prohibited recipients of legal-services funding from challenging the constitutionality of welfare laws, because this law was an attempt by Congress to single out particular legal theories and ideas for suppression. *Id.* at 547–49. The Court highlighted the constitutional tension imposed by the funding restriction: "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment . . . prohibits speech and expression upon which courts must depend for the proper exercise of the judicial power. Congress cannot wrest the law from the Constitution which is its source." *Id.* at 545. In striking down the law, the Court explained that because the "[t]he Constitution does not permit" government to "insulate [its] interpretation of the Constitution from judicial challenge," courts "must be vigilant when [the government] imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge." *Id.* at 548–49.

In sum, while the Governor tries to minimize this unbroken line of authority by distinguishing the type of regulation at play, the Supreme Court's overarching concern has never been with the particular mechanism used by the government, but with its

effect on burdening First Amendment petitioning rights. Laws designed, according to the Governor, to "put [civil rights plaintiffs] on the defense" violate their petitioning rights.

The Governor also fails to account for the distinct harm to Plaintiffs' associational interests and ability to obtain effective counsel, which, as noted in Plaintiffs' motion, are intertwined with their access to the courts. *See* Pls.' Mem. 16:20–17:11. Section 1021.11 does not just "add to the cost" of bringing "certain types of claims." For Plaintiffs, firearms advocacy "litigation [is] a vehicle for effective political expression and association, as well as a means of communicating useful information to the public." *Primus*, 436 U.S. at 431. And as Governor Newsom well knows, in California, "litigation may be well be the sole practicable avenue open" for firearms advocacy groups to vindicate their constitutional rights. *Button*, 371 U.S. at 429–30. Yet Section 1021.11 chills this expressive association by dissuading these groups and other plaintiffs from bringing such litigation and by threatening financial punishment on their counsel for the normal "untidiness" of litigation, which can result in the dismissal of some claims in an otherwise successful case and which, under Section 1021.11, would then result in joint fee liability. *Fox v. Vice*, 563 U.S. 826, 834 (2011).

The Governor's discussion of *Detraz v. Fontana*, 416 So.2d 1291, 1293 (La. 1982), similarly misses the forest for the trees. While it may be correct that Louisiana's law required an up-front bond to cover the government's fees while Section 1021.11 does not require a litigant to pay fees until the "end of a case," the fact remains that the scheme in *Detraz*, just like here, was a one-way fee-shifting statute in favor of the government. *Id.* at 1294–96. And the reasoning of *Detraz* applies with equal force here. Louisiana sought to resist the civil rights recognized in *Brown v. Board of Education* "by making it extremely costly, if not prohibitive, for minority groups or individuals to bring suit against any public official . . . for the redress of

grievances suffered because of race." *Id*. at 1293–94. That conduct was not constitutional then and is not constitutional now.

Governor Newsom buries his response to *In re Workers Comp. Refund*, 842 F. Supp. 1211 (D. Minn. 1994), in a footnote. *See* Governor's Br. 10 n.4. And he yet again tries to lean on a narrow factual distinction, pointing out that the Minnesota statute did not *directly* require plaintiffs to pay the government's attorney's fees. Once again, however, this distinction is irrelevant. The district court held there that the First Amendment prohibited the government from "deter[ring] litigation" and "punish[ing] litigants" with a law forcing them to pay for the government's fees. 842 F. Supp. at 1218–19.[2] In reaching this conclusion, the district court acknowledged that it "impermissibly burdens plaintiffs' First Amendment right of access to the courts" that could only be seen as an unconstitutional effort to "forestall" or "chill" a lawsuit. *Id*. at 1219. The same is true of Section 1021.11.

### 4. The Governor Cannot Justify Section 1021.11's Content-Based Speech Restriction.

Plaintiffs' motion demonstrated that civil-rights litigation involves core protected speech. *See Button*, 436 U.S. at 428 (civil rights litigation "is 'a form of political expression'"); *Primus*, 436 U.S. at 431; *Velazquez*, 531 U.S. at 545. Yet Section 1021.11 singles out speech over firearms restrictions for special unfavorable treatment. The Governor argues that Section 1021.11 is not content-based and viewpoint-discriminatory by pointing to a variety of state and federal fee-shifting laws that he says apply only in "selective circumstances" and "for certain categories of claims and not others." Governor's Br. 11:7–9. In doing so, however, the Governor proves our point. All of his examples involve one-way fee-shifting *in favor* of

---

[2]     The fee-shifting law at issue there imposed fees on plaintiffs indirectly as members of the mandatory association that was required to pay the government's fees. *See* 842 F. Supp. at 1218. Yet the court still found that the law impermissibly burdened the plaintiffs' petition rights. *Id*. at 1218–19. Section 1021.11, by contrast, is a more direct assault on the petitioning rights of firearms litigants.

promoting the assertion of certain types of claims; none involve *penalizing* the assertion of claims:

- California Labor Code § 1194 authorizes an aggrieved employee to recover fees from an employer in a successful wage-and-hour case.

- California Government Code § 12965 authorizes prevailing plaintiffs to recover fees in discrimination and harassment cases under the Fair Employment and Housing Act.

- 42 U.S.C. § 1988(b), as we have emphasized, generally awards fees to civil-rights plaintiffs who prevail on any substantial issue in a case challenging unconstitutional state action, while only allowing a government defendant to recover fees if the plaintiffs' position was frivolous. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983).

- 5 U.S.C. § 552(a)(4)(E) similarly allows fee awards for prevailing FOIA plaintiffs.

- And Florida Stat. § 627.428 allows insureds or the beneficiaries to recover fees in certain lawsuits against insurers.

Far from encouraging claims like these statutes do, Section 1021.11 discourages claims—and only claims of a certain type. As the Court has already noted, this fee-shifting provision is "unusual in American law." Order, ECF No. 27, 1:18. Its content- and viewpoint-based discrimination finds no support in these other statutes.

But the Governor ignores Plaintiffs' argument that Section 1021.11 imposes a unique burden on, and only on, those who seek to vindicate their civil rights through firearms litigation, favoring all other constitutional and statutory civil rights claims. *See* Pls.' Mem. 18:1–27. California has used its legislative power to suppress *only* firearms advocates' access to the courts. This sort of discrimination means the law must pass strict scrutiny. The Governor makes no attempt to satisfy this standard. Nor

could he: The only government interest he identifies is parity with S.B. 8—a law he steadfastly maintains is unconstitutional.[3]

### D.   Section 1021.11 Also Violates The Equal Protection Clause.

The Governor is correct that, insofar as Plaintiffs' equal-protection claim is based on an unequal infringement of their right to petition, it overlaps with Plaintiffs' First Amendment claim—and Section 1021.11 violates the Equal Protection Clause for the same reasons. The Governor offers no direct response to Plaintiffs' independent equal-protection argument that Section 1021.11 impermissibly "classifies" civil-rights plaintiffs "with respect to the fundamental right to access the courts." Pls.' Mem. 21:15–16. And as discussed, this is not a case where California has provided "for fee-shifting for *some* types of claim[s]" but not for "*all* claims." Governor's Br. 12:19–20. Rather, Section 1021.11 imposes a fee-shifting *penalty* on only some types of claims to discourage plaintiffs from bringing those claims. By classifying in this way between plaintiffs who exercise their right to petition against firearm regulations and plaintiffs who exercise their right to petition against any other regulation, Section 1021.11 implicates the Equal Protection Clause.

This classification also impacts Plaintiffs' Second Amendment rights. Of course, Section 1021.11 does not directly regulate the possession or carrying of firearms, and for that reason this claim is not subject to the *Bruen* framework, as the Governor suggests. *See* Governor's Br. 13:5–8. Yet by infringing on Plaintiffs' right to petition, Section 1021.11 does affect Plaintiffs' ability to defend and consequently exercise their rights to keep and bear arms. The classification thus "affect[s] fundamental rights," whether located in the First or Second Amendment. *Clark v.*

---

[3]     Plaintiffs also argued that the lack of any historical pedigree further emphasized that the State cannot justify Section 1021.11. *See* Pls.' Mem. 20:6–22. The Governor fails to respond to this argument, but his repeated acknowledgment that S.B. 8 is "novel" and "unusual" suffices to show that Section 1021.11 has no historical analogue.

*Jeter*, 486 U.S. 456, 461 (1988). And for the reasons above and in our underlying motion, it cannot satisfy any level of scrutiny.

## II.    The Governor's Harm And Jurisdiction Arguments Are Foreclosed.

The Governor argues that Plaintiffs cannot satisfy the other requirements for an injunction because Plaintiffs purportedly "lack any ripe claim or risk of irreparable harm" in light of the Attorney General's conditional non-enforcement position. Governor's Br. 16:7; *see also id*. 17:12–21 (arguing that the balance of the equities and public interest also weigh against an injunction "[b]ecause Plaintiffs face no imminent threat of harm"). The Court rejected these same arguments just weeks ago after they were offered by the Attorney General himself, observing that the Attorney General's "recent commitment is not unequivocal," "is not irrevocable," and in fact "evinces an intention *to enforce* the statute" if S.B. 8 is upheld. Order, ECF No. 27, 2:15–3:1. Nothing has changed in this regard. Plaintiffs face an imminent and irreparable constitutional injury absent an injunction. The equities and public interest necessarily favor preventing that injury with an injunction.

At the Governor recognizes, the Court's recent order likewise forecloses his jurisdictional claim, which is meritless for the reasons in that order. There is no cause to reconsider that order in light of the Eastern District's decision in *Abrera v. Newsom*, No. 2:22-cv-1162, 2022 WL 17555524 (E.D. Cal. Dec. 9, 2022), which does not bind this Court and which did not address the conditional nature of the Attorney General's non-enforcement position here. *See id*. *2 (crediting "Defendants['] claim that their commitment to not enforcing the statute against Plaintiff is unconditional"). This Court's jurisdictional analysis remains correct on the facts of this case.

## CONCLUSION

The Court should issue an order declaring unconstitutional and enjoining Defendants and their agents from enforcing California Code of Civil Procedure Section 1021.11.

1

2      Dated:  December 14, 2022          BENBROOK LAW GROUP, PC

3                                         By  s/ Bradley A. Benbrook
4                                         BRADLEY A. BENBROOK
                                          Attorneys for Plaintiffs
5                                         COOPER & KIRK, PLLC

6
7                                         By  s/ David H. Thompson
                                          DAVID H. THOMPSON
8                                         Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28